[Civ. No. 5278.    Fourth Dist.    Dec. 20, 1956.]

Adoption of MAURICE LYNN BURTON et al., Minors. GEORGE ARCHER STANLEY, Respondent, v. MAURICE W. BURTON, Appellant.

Jerry B. Riseley for Appellant.

Launer, Chaffee & Launer and Thomas J. Koerber for Respondent.

COUGHLIN, J. pro tem.*—This is an appeal from an order approving a stepparent adoption.

George Stanley filed a petition to adopt his wife's two sons by a former marriage. His petition alleges that he and Ruth Stanley, the mother of the boys, were married on June 2, 1946; formerly she was married to Maurice Burton, the father of these children, and obtained a divorce from him through a decree granted by the District Court of Rooks County, Kansas; by order of that court, in the divorce proceedings, the custody of the children was awarded to their mother; their father "for more than a year prior to the filing of this petition, to wit: since the year 1946, . . . although able to do so . . . wilfully failed to pay for their care, support and education; and their mother is desirous that petitioner adopt these children as his own.

On September 22, 1945, the District Court of Rooks County, in the divorce action referred to, ordered that the custody of the Burton children be awarded to their mother during the nine school months of the year, and to their father during the summer months, and directed the father to pay for their support. This order was amended on June 15, 1946, when the court awarded "sole custody" to the mother, and directed that the father should have the right to visit the children at all reasonable times. On June 2, 1946, Mrs. Burton had married Mr. Stanley. Thereafter, the two boys, who then were 5 and 7 years of age, respectively, lived with their mother and stepfather.

In August, 1952, Mrs. Stanley, the former Mrs. Burton, filed a petition in the said district court asking permission to take the children to the State of California and alleging that

---

*Assigned by Chairman of Judicial Council.

Mr. Burton was "in default of child support payments in the sum of approximately $2,700"; that her present husband was required to support the children; and, for this reason, they desired to move to California where he could earn more money. The court found that the allegations in the petition were true and granted the permission requested, providing Mrs. Stanley post a bond in the sum of $1,000, conditioned upon her returning the children to the State of Kansas should the court order such return.

Thereafter, the two boys, with their mother and stepfather, moved to California; lived together; continued to be supported by their stepfather; and received no communication or support from their father.

On October 13, 1954, the petition for adoption was filed and on December 19, 1954, Mr. Burton, the children's father, was served with a citation issued out of the Superior Court of Orange County, California, pursuant to the provisions of section 224 of the Civil Code. About two weeks later, he petitioned the District Court of Rooks County, Kansas, to modify the custody decree theretofore entered. Service of the petition was made upon the mother's attorney in the divorce action. Thereupon, this attorney, purporting to act for Mrs. Stanley, the former Mrs. Burton, moved for and obtained an order from the Kansas court directing her former husband to pay her travel expenses to attend the hearing of the petition for modification. Subsequently, Mrs. Stanley discharged her Kansas attorney. On January 27, 1955, the Kansas court modified the former custody order by awarding custody of the children to their father "for a period of at least thirty (30) days during the summer school vacation."

A stipulation, dated January 24, 1955, agreeing that the hearing of the adoption be continued and stating that "Maurice W. Burton does hereby appear" was filed in the California court on February 1, 1955.

On March 11, 1955, the children's mother signed and filed a written consent to their adoption by her husband, on the form and in the manner prescribed by section 226 of the Civil Code.

The petition for adoption was heard on March 15, 1955, at which time the boys' natural father appeared in person, and by an attorney, although no written objections or answer to the petition had been filed on his behalf. Evidence was introduced. The court found that it was for the best interests of the two boys that they be adopted by their stepfather; that

the mother's consent alone was sufficient to effect such adoption; and that the natural father's consent thereto was not necessary as he had wilfully failed to pay for the care, support and education of his children, when able to do so, for a period of one year during the time they were in the custody of their mother by judicial decree.

The children involved in this proceeding had resided in California for almost two years prior to the filing of the petition for adoption. During all of this time they were in the sole custody of their mother under an order of the Kansas court. �In Residence is a question of fact involving "very largely a matter of intention." (*Dreher* v. *Superior Court*, 124 Cal.App. 469, 476 [12 P.2d 671].) ▮ Upon substantial evidence the trial court found that these children were residents of California. This conclusion was legally sound, as the residence of the minor children whose custody has been awarded to their mother is determined by her residence. (*Titcomb* v. *Superior Court*, 220 Cal. 34, 42 [29 P.2d 206].) ▮ Contrary to appellant's contention, the finding in question is not in conflict with a further finding that the children were removed to California upon the posting of a bond conditioned upon their being returned to Kansas if the court of that state so ordered. Even though it be assumed, as argued, that the children's mother intended to return them to Kansas in the event the court of that state so ordered, this fact did not alter her intention to continue their residence in the State of California. ▮ As the children were residents of this state, the California court had jurisdiction over them, (*Foster* v. *Foster*, 8 Cal.2d 719 [68 P.2d 719] ; *Titcomb* v. *Superior Court*, 220 Cal. 34, 39 [29 P.2d 206]) which attached at the time the petition was filed. (*Sampsell* v. *Superior Court*, 32 Cal.2d 763, 776 [197 P.2d 739].)

The natural father contends that the order of adoption should be reversed because he did not consent thereto, as required by law.

The merit of this contention depends primarily upon an interpretation of the following provisions of section 224 of the Civil Code:

"A legitimate child cannot be adopted without the consent of its parents if living; however, after the custody of any child has by any judicial decree, been given to the mother, and the father for a period of one year shall wilfully fail to pay for the care, support and education of such child when able to do so, then the mother alone may consent to such

adoption, but only after the father has been personally served with a copy of a citation requiring him to appear at the time and place set for the appearance in court . . .''

██ ''Where the meaning of the statute is plain there is no room or justification for judicial interpretation, and the only function of the court is the application of the enactment to the facts at bar.'' (*Riley* v. *Robbins,* 1 Cal.2d 285, 287-288 [34 P.2d 715].) ██ Where interpretation is in order it must be reasonable. (Civ. Code, § 3542.) The interpretation of a statute as a whole must be reasonable and ''when opportunity arises, made compatible with common sense and the dictates of justice. In other words, it is the duty of courts not to be ingenious to find ambiguity in statutes because of extraneous matters, but to interpret them in such a manner that they may be free of ambiguity, and to give, if possible, a construction which not only renders them constitutional, but which is consistent with sound common sense and wise policy, with a view to promoting justice.'' (*Estate of Todd,* 17 Cal. 2d 270, 275 [109 P.2d 913].)

██ It is our opinion that the plain intent of said section 224 is to provide that a legitimate child may not be adopted without the consent of both parents, unless custody of such child has been given to the mother by judicial decree, and, during the time the child is in the custody of the mother, the father has wilfully failed to pay for the support, care and education of that child for a period of one year, when able to do so, in which event the child may be adopted with the consent of the mother alone, but only after the father is served with a citation requiring him to appear at the adoption hearing.

Appellant contends that the facts of this case do not bring it within those provisions of the code authorizing the adoption of a child with the consent of the mother alone. This contention is based upon the premise that, under the code section in question, the mother's consent alone is sufficient *only* if she has sole custody of the child to be adopted at the time she files her written consent with the court, and the father has wilfully failed to pay for the care of such child, having the ability to do so, for the one year period immediately prior to the filing of such consent. In the case at bar, after the petition for adoption had been filed but before the mother of the children to be adopted had signed and filed her consent to the adoption, as required by section 226 of the Civil Code,

the order awarding her sole custody had been modified by the Kansas court, as heretofore noted.

Appellant cites the case of *Miller* v. *Higgins,* 14 Cal.App. 156 [111 P. 403], in support of his position. When that case was decided, under the provisions of section 224 of the Civil Code a child could be adopted without the consent of a parent adjudged guilty of cruelty and for such cause divorced. However, the court conducting the adoption hearing was obliged to determine from the evidence, as a jurisdictional fact, whether the parent allegedly guilty of cruelty should be present. (*Estate of McKeag,* 141 Cal. 403, 408 [74 P. 1039, 99 Am.St.Rep. 80].) The cited case held that it was a fraud on the court hearing a petition to adopt a child, based on the consent of the mother alone, who had been awarded custody of that child in a proceeding in which she was granted a divorce from the father on the ground of cruelty, to withhold knowledge of a contemplated change of the custody order by the divorce court, which would have given custody to the father; and that such a fraud prevented a determination of the jurisdictional fact relating to the need for notice to the father, which authorized setting aside the adoption order.

Three other cases relied upon by appellant, *In re De Leon,* 70 Cal.App. 1 [232 P. 738]; *In re Christie,* 98 Cal.App. 158 [276 P. 1045]; and *Bruns* v. *State Bar,* 213 Cal. 151 [1 P.2d 989], involved adoptions under the provisions of the former statute considered in *Miller* v. *Higgins, supra,* and held that a nonconsenting parent who had custody of the child to be adopted was entitled to notice of the adoption hearing.

In the case at bar, no fraud was committed on the court and the father was present at the hearing pursuant to a citation requiring his presence in accord with the mandate of the statute as it now exists and in conformity with the decisions in the cited cases.

Appellant also relies upon the decision in the *Matter of the Adoption of Margaret Cozza,* 163 Cal. 514 [126 P. 161, Ann. Cas. 1914A 214], in which the court was considering the former adoption statute, which provided "that consent is not necessary from a father or mother . . . adjudged guilty of adultery or cruelty, and for either cause divorced . . ." and held that these provisions did not apply to the adoption of a child whose custody had been awarded to the mother in the divorce action even though she was guilty of cruelty resulting in a divorce. Literally construed, the provisions of the statute under consideration in the cited case dispensing

with consent applied to any parent guilty of cruelty resulting in a divorce. No exceptions were made. Nevertheless, considering the statute as a whole, the court declared that it was the intent of the Legislature to dispense with the necessity of parental consent to an adoption only "where a decree of divorce is granted on certain specified grounds and the innocent spouse is given absolutely the custody of the children— a judicial determination that he or she, on account of specific matrimonial misconduct should not have future control or custody of them—or where the children have been deserted or abandoned by their parents, and such unnatural conduct dispenses with such consent."

Applying the reasoning of the decision in *Matter of Cozza, supra,* to an interpretation of the provisions of section 224 of the Civil Code as they now exist, justifies the conclusion that those provisions permit the adoption of children without their father's consent only when their mother has custody of them during the whole of the one-year period when the father fails to pay for their care, although, under a strict construction of the statute, his consent would not be necessary if he failed to pay for their care for a one-year period "after" their custody was given to the mother, even though she did not retain custody during the whole of that period. However, the contention of appellant that his children were not subject to adoption without his consent, because their mother did not have sole custody of them at the time she filed her consent with the court, is not supported by the rule or reason of the cases cited by him, or the language of the statute as it now exists. Likewise, his contention that the one-year period referred to in the code section, during which the father fails to pay for the care of his children, when able to do so, is the one-year period immediately preceding the filing of the mother's consent, finds no support in these authorities. Section 224 of the Civil Code does not provide that the "mother alone may consent" to the adoption of her children only if she has sole custody of them at the time she files her consent with the court. Under that code section if "the father for a period of one year shall wilfully fail to pay for the care, support and education" of his children "when able to do so," after the custody of such children has been given to the mother by judicial decree, they may be adopted without his consent. The failure to support for one year must occur "after" custody of the children has been given to the mother. The statute makes no other provision

relating this one-year period of neglect to any other time or event.

In substance, Civil Code, section 224, recognizes a father's right to effectively object to the adoption of his children, by requiring that he give his consent to such adoption, and provides that he may lose that right upon the happening of events which are tantamount to an abandonment. At any time after the conditions of the statute, with respect to neglect by the father, have been fulfilled, a child may be adopted with the consent of the mother alone, unless the court, in the discharge of its obligation to approve the adoption only if it is for the best interests of the child, should determine otherwise. (*In re Sharon,* 179 Cal. 447, 454 [177 P. 283] ; *In re Johnson,* 98 Cal. 531, 536 [33 P. 460, 21 L.R.A. 380].) Under the present statute, the father must be given notice of the hearing. This affords him an opportunity to contest the contention that his children may be adopted with the consent of the mother alone, and also to show that the adoption would not be for their best interests. The court is authorized to deny the petition if the best interests of the child would be served by maintaining the existing relation with a natural parent, in the event custody had been restored to the father or he had resumed acceptance of his responsibilities.

This interpretation is in accord with the spirit of our law which, although ''solicitous toward maintaining the integrity of the natural relation of parent and child'' (*Matter of Cozza, supra,* 163 Cal. 514, 524), recognizes that this relation may be terminated by conduct of the father regarded as unnatural and destructive. The obvious purpose of the statute under consideration is to provide a child with a real father instead of one who, by his past conduct, is proven to be a father in name only, even though related by blood. This purpose would be defeated if a father who had failed to provide for his child under the conditions described in the statute could prevent the child's adoption with the consent of the mother alone by obtaining a change in the custody order, or making a support payment after the filing of the petition for adoption. A statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligations.

The fact that the Kansas court amended its order after the filing of the adoption petition, and awarded custody of the children to appellant for part of a year, did not

preclude the California court from proceeding with the adoption hearing. ▮ Different courts in different proceedings may have jurisdiction over the custody of children independent of each other. Even though one of the elements essential to an adoption upon consent of the mother alone is a judicial decree giving her custody of the children, the adoption proceeding as such and the custody proceeding in the divorce action are not dependent on or subject to each other. (*Younger* v. *Younger,* 106 Cal. 377, 381 [39 P. 779]; *Adoption of Kelly,* 47 Cal.App.2d 577 [118 P.2d 479].) ▮ A California court is not foreclosed from providing for the best interests of a minor who is a resident of this state because the custody of that minor has been the subject of a judicial decree in another state. (*Sampsell* v. *Superior Court,* 32 Cal.2d 763, 778 [197 P.2d 739]; *Foster* v. *Foster,* 8 Cal.2d 719, 726 [68 P.2d 719]; *Titcomb* v. *Superior Court,* 220 Cal. 34, 39 [29 P.2d 206]; *Anthony* v. *Tarpley,* 45 Cal.App. 72, 79 [187 P. 779].)

In the case at bar, after the custody of the children had been given to the mother, the father failed to support them for a period of several years, continuing up to the time the petition for adoption was filed. Appellant contends that the evidence does not support the findings of the trial court that he "was able to pay for the care, support and education" of his children during a "period of more than one year prior to the date of filing the petition herein" because he was under a doctor's care from February to June, 1954, and in a state hospital from July 12 to August 10, 1954.

▮ The fact that a father may be ill during a part of any year when he has failed to provide for his children is not determinative of his ability to pay for their care during that year. (*Adoption of Kelly,* 47 Cal.App.2d 577 [118 P.2d 479].)

▮ In this case, whether the natural father was able to pay for the support of his children during a "period of more than one year prior to the filing of the petition" for adoption, was a question of fact. ▮ The evidence shows that from some time late in 1947 up to February, 1955, appellant paid nothing for the care of his children; they received no Christmas presents, birthday cards, letters, food or clothing from him; he went to college part of the time during the years 1947, 1948 and 1949; during May and June, 1952, he was employed as an accountant, which employment came to an end because he decided not to go back to work; in July

and August of 1953, his employment by the State Department of Administration was terminated in the same way; from 1950 to date he edited and published a sports magazine owned by himself and his father; although he claims this enterprise was unprofitable, he has not tried to get any part time work since 1953, and had sufficient funds to buy a new automobile in 1951, another new automobile in 1953, and a third new automobile shortly thereafter; he has been married and divorced three times since divorced by his children's mother; although he claims to be suffering from a service connected nervous affliction, on more than three occasions he was arrested and convicted for drunkenness, and on another occasion became involved in a drunken brawl which hospitalized him for three months, and it may be inferred that his alleged nervousness is the result of his intemperance. The finding of the trial court with respect to appellant's ability is adequately supported by the evidence.

In this case, there were several one-year periods during which appellant failed to support his children. The fact that the parties involved were residents of Kansas during some of these periods does not prevent a consideration thereof in applying the statute. (*In re Williams,* 102 Cal. 70, 80 [36 P. 407, 41 Am.St.Rep. 163].) Even though appellant might have been ill or hospitalized during a part of the one-year period prior to the filing of the petition for adoption, the trial court, nevertheless, was justified in finding that he was able to pay for the care of his children during such period. Moreover, contrary to appellant's contention section 224 of the Civil Code does not provide that a child may be adopted with the consent of the mother alone only when the father's wilful failure to pay for the care of such child, when able to do so, has occurred during the one-year period immediately prior to the filing of the petition for adoption. As heretofore noted, no reason appears for inferring that the Legislature intended other than the plain meaning of the language used in this section to govern its application. Under these circumstances, the father's inability to provide for his children for a short time during the one-year period immediately prior to the adoption is not determinative.

The order granting the petition for adoption is affirmed.

Barnard, P. J., and Griffin, J., concurred.