**In the Matter of the Adoption of LeAnne Marie EDDY and Karen Sue Eddy, Minor Children.**

**No. 43197.**

Supreme Court of Oklahoma.

Aug. 3, 1971.

Woodson & Gasaway, Tulsa, for plaintiff in error, Donald L. Eddy.

James M. Sturdivant, Jack N. Hays, of Gable, Gotwals, Hays, Rubin & Fox, Tul-

sa, for defendants in error, James E. and Ouida M. Nuckolls.

BLACKBIRD, Justice.

The above named minors, Karen Sue and LeAnne (born in August, 1957, and April, 1963, respectively), are the daughters of the plaintiff in error, Donald L. Eddy, and his former .wife, Ouida Marie, now Mrs. James E. Nuckolls. After being married almost 10 years, Donald and Ouida were each granted a divorce from the other on the grounds of incompatibility by a decree entered in March, 1965, in Cause No. D–87907, entitled "Ouida M. Eddy, Plaintiff, vs. Donald L. Eddy, Defendant", of the District Court of Tulsa County. By said decree, Ouida (who was awarded the couple's real estate and family auto, but no alimony) was granted custody of their named young daughters. Defendant was allowed reasonable visitation privileges and "ordered to pay the sum of $50.00 per month per child as and for child support until said minors attain their majority, * * *".

Thereafter, Eddy (hereinafter referred to by his trial court designation of "respondent") made the decreed child support payments until Ouida married her present husband, in January, 1966. Eddy has not remitted the child support payment due for the month of February, 1966, or any month since. In February, 1967, he remarried.

In April, 1967, Nuckolls and Ouida (hereinafter referred to as "petitioners") commenced the present proceedings to adopt the two Eddy girls in the County Court of Tulsa County, hereinafter called "trial court". They filed a separate petition for adoption of each child (later consolidated under the trial court's cause No. A–2761) and, in connection therewith, also filed an application for an order determining the girls' eligibility for adoption, without the consent of their natural father.

In his response to said application, respondent Eddy did not deny that since February 1, 1966, he had not contributed the $100.00 per month to the minors' support, as required by the divorce decree, but he prayed that the petitioners' application that the girls be determined eligible for adoption without his consent be denied, alleging, among other things, that while he had "not literally complied" with said decree,

"* * * he has made a contribution through premiums on an endowment policy and had complied with the order by providing necessary clothes and food upon visitation sessions with the children which have been regular.

\* \* \* \* \* \*

"SIX: That the sums provided in clothing and food plus insurance premiums and the endowment that each child will receive at age eighteen (18) closely parallel and equal child support monies paid over the same length of time if paid at the same rate as set forth in the divorce decree heretofore entered.

"SEVEN: That prior to the date of hearing on the petitioner's application for the order determining child eligible for adoption without consent of natural father, the respondent did file a motion to modify and ratify in the District Court of Tulsa County, which still has jurisdiction, asking that the plan herein set forth be ratified and that the divorce decree be modified to include said plan so that said plan may continue in effect. However, said motion to modify and ratify was filed only one day prior to the hearing date set by the county court. \* \* \*"

At the trial court's first scheduled hearing on the matter in April, 1967, the respondent, who appeared both in person and by counsel, orally requested a continuance until May 15th, but thereupon consented to the court's hearing evidence, upon condition that his request be taken under advisement. During the introduction of evidence in support of the parties' contrary positions as to the necessity of respondent's consent to the minors' adoption, it was shown, among other things,

that in May, 1966, several months after respondent had discontinued his child support payments, he had converted the four-hundred-dollar value of a life insurance policy, he had, into a 15-year, four-thousand-dollar endowment policy, naming the minors as beneficiaries; that the annual premium on this endowment policy is $284.-08; that he has taken the position (of which his attorney had informed petitioners' attorney by letter of August 8, 1966) that his payment of monthly installments on this annual insurance premium. was sufficient as his contribution to the minors' support; and that, despite his attorney's advice that he could be held in contempt of the divorce court and that the minors' adoption, without his consent, might happen, if he continued his refusal to comply with the divorce decree's child support provisions for a period of one year, he wished to continue the insurance premium payments, and "take his chances with the Courts."

After it appeared, as an undisputed fact, that respondent had filed in the divorce action (cause No. D–87907, supra) a motion seeking the divorce court's ratification of his desired substitution of the insurance premium payments, for the previously decreed child support payments, and asking for a modification of the divorce decree changing his financial obligation, thereunder, to the making of the premium payments, the trial court reserved final decision as to whether the minors could be adopted without respondent's consent, until the District Court had acted upon respondent's said motion.

In June, 1967, the next month after the District Court had overruled respondent's said motion, the trial court held a further hearing as to the necessity of respondent's consent to the adoption, and, at the conclusion of said hearing, found that respondent had wilfully failed, for 12 months next preceding the filing of the adoption petition, to make the support payments required by the Eddy divorce decree; and held that, under this State's Uniform Adoption Act, respondent's consent to peti-

tioners' adoption of Karen Sue and Le-Anne was not necessary.

Thereafter, the trial court temporarily recessed a later hearing (whose purpose was to determine whether or not the petitioners' adoption of the minors would be for the latters' best interests) in order to interview the minors in his chambers, pursuant to respondent counsel's request that the older child, Karen Sue (then 10 years old), be consulted about the prospective adoption. At the close of the hearing, and after testimony had been heard from several witnesses as to the petitioners' character, and as to other matters pertaining to the purpose of the hearing, the court further continued the case, so that he could order a confidential investigation from the State Department of Public Welfare concerning the matter and allow that Department 30 days to transmit its report of such investigation. Then there was the following colloquy between the court and respondent's counsel:

"MR. GASAWAY: Your Honor, may I make one inquiry.

BY THE COURT: Yes, sir.

MR. GASAWAY: And that is if in chambers the Court inquired of the two daughters their opinion of their natural father, whether or not they enjoyed visiting with him?

BY THE COURT: I did not go into that carefully. I went into their present situation, and as to whether or not they wanted to stay where they were.

* * * I was very careful in going in(to) * * * whether they wanted to change and particularly as to the change of their name, and I asked them whether they wanted Mr. Nuckolls as their legal daddy."

When the court's final hearing was held on March 27, 1968, and it appeared that the Public Welfare Department's report of its investigation may have been received, respondent's attorney inquired of the court as to whether one of the persons interviewed in that investigation was a Mrs. S, a former baby-sitter for the minors.

The court's answer to the inquiry indicated that the Department's report contained no evidence that there had been such an interview.

At the close of the hearing, the court announced he had concluded that "it would be to the best interest of each of the children for the adoption to be consummated", and stated, in substance, that the decree of adoption, petitioners sought, would be entered. Respondent was thereupon allowed an exception to said ruling, and he thereafter lodged the present appeal.

■ Respondent's first proposition for reversal is directed at the trial court's determination that his consent was not necessary to the adoption. He contends that the section of the Uniform Adoption Act (Tit. 10, O.S.1961, § 60.7) authorizing the adoption of a child, without the consent of a parent, who has "wilfully failed, refused or neglected to contribute to" the child's support "as provided in the decree of divorce, for a period of one (1) year next preceding the filing of a petition for adoption of such child", is unconstitutional. In further argument that he was deprived of due process of law because of the fact that the trial court's initial hearing occurred before the divorce court's hearing on his motion, he ignores the fact that the trial court refrained from any final decision as to whether the minors could be adopted without his consent, until after the other court's hearing, and ruling, upon his said motion; and he completely fails to demonstrate how the procedure, that was followed, deprived him of due process, or was contrary to public policy.

■ As to respondent's belated attempt to challenge the constitutionality of Section 60.7, supra, we note that he made no effort to raise such an issue before, or during, the trial of the "consent" phase of the case. Consequently, it is not an issue here.

■ Under his "PROPOSITION TWO", respondent contends that the trial court abused his discretion and was unfair, prejudicial and biased toward him in fail-

ing to require that the Public Welfare Department's investigation include an interview with the aforementioned baby-sitter, Mrs. S, and the Pastor of the church petitioners usually attended. No offer was made, however, to show what, if any, evidence such interviews would have produced, or that they would, in any manner, have affected the outcome of this case. We have held that a judgment may not be set aside on appeal because of the trial court's exclusion of a witness' testimony, where no offer was made to show what facts the excluded testimony would have disclosed. See Boone v. State ex rel. Dept. of Highways, Okl., 261 P.2d 581. Upon application of the same principles to respondent's present complaint, we hold that it constitutes no cause for reversing the trial court's judgment.

■ Respondent also complains of the trial judge's hereinbefore described failure, in his private interview with the minors, to question them "carefully" about their relations with, and feelings toward, him. For reasons similar to those indicated immediately above, we find no cause for reversal in this complaint. On the contrary, it is our opinion, from a thorough examination of the record, that the trial court made an extraordinary effort to, and did, accord respondent all of the rights and privileges to which he was entitled, and displayed sincere concern for the best interest of the minors in reaching a just and proper decision.

Under his third proposition, respondent refers to his testimony concerning occasions on which (during his visits with the girls) he bought them presents, two of which he said cost as much as $15.00 (which figure was virtually denied by Ouida, who acknowledged he had given them gifts of less value on a few occasions), and to his payment of premiums on medical and hospitalization insurance, as well as the premiums on the aforementioned endowment policy. He contends that these were "support payments", rather than "contributions", under Oklahoma law;

but he cites no authority for this statement.

Respondent's further argument is that these "contributions" (as he *here* calls them) show that he did not wilfully violate the terms of the divorce decree; and he urges that these and "other (unnamed) considerations, as stated in the record, show mitigation and contribute to the fact * * * (he) * * * was not wilfully in violation" of said decree. He also suggests that petitioners "waived and acquiesced" in his nonpayment of the support installments prescribed in said decree; and he quotes In Re Favro's Adoption, 44 Misc.2d 464, 254 N.Y.S.2d 278, and In Re LaFitte (La.App.), 168 So.2d 837, as suggestive of the proper decision in this case on the question of whether or not his consent to the adoption was necessary.

In Re Favro's Adoption, supra, involves features of the New York law so completely different from Section 60.7, supra, that this case is entirely inapposite, and warrants no further discussion.

■ The LaFitte case involved a provision of the Louisiana adoption law similar to 60.7, supra, that, in a previous opinion (promulgated in In Re Ackenhausen, 244 La. 730, 154 So.2d 380), the Louisiana court had indicated should be interpreted as meaning that a natural parent's consent to his child's adoption can only be dispensed with when his failure to comply with a court order for child support "is without just cause." Neither of the Louisiana cases referred to can furnish respondent any aid or support here, because the record in this case fails to show any just cause, whatsoever, for his failure and refusal to comply with the divorce decree for more than one year next preceding the filing of the petitions in this case. At no time in the past has respondent ever claimed that he was unable to comply with the decree because of his financial condition, or any other cause. Judging from the aforementioned letter his attorney wrote to Ouida's attorney, his only reasons for his refusal to comply with the decree were that he did not feel she was "in need of the support money to feed the children" and thought that any such money he paid her would just constitute "spending money for her to do with as she saw fit." Respondent frankly admitted, during the course of his testimony, that he had erred, and expressed his willingness, at that late date, to pay up all of his delinquent support obligations. Though respondent may have belatedly realized the error of his persistence in attempting to substitute his own idea of his financial obligation to his children, for that of the divorce court, in the face of the forewarning against this by his counsel, we can only conclude, as we did of the natural father in In Re Adoption of Greer, Okl., 463 P.2d 677, that, in so doing, he obviated the necessity of his consent to the minors' adoption under Section 60.7, supra. Our quotation there (p. 679) from the California case of In Re Burton's Adoption, 147 Cal.App.2d 125, 305 P.2d 185, 191, also applies to the respondent here.

■ Nor do we find any evidence that petitioners have waived or acquiesced in respondent's conduct, unless Ouida's not having him cited for contempt for his refusal to obey the divorce decree may be so construed. On the basis of the record, this cannot be done.

The judgment of the trial court is neither contrary to the evidence nor to the law. It is therefore affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, JACKSON, LAVENDER and McINERNEY, JJ., concur.

IRWIN, J., dissents.