[Civ. No. 47775. Second Dist., Div. Two. Sept. 23, 1976.]

Adoption of ELIZABETH CRADDOCK VAN ANDA et al., Minors.
RICHARD PAUL STORRS, Plaintiff and Appellant, v.
ROBERT KESSINGER VAN ANDA, Defendant and Respondent.

190

**COUNSEL**

Sol P. Ajalat for Plaintiff and Appellant.

Michael Angelo Pontrelli for Defendant and Respondent.

**OPINION**

**COMPTON, J.**—Richard Paul Storrs petitioned the Superior Court of Los Angeles County to be permitted to adopt Elizabeth, age 11, and Catherine, age 13, the two minor children of his present wife Nancy. Nancy consented to the adoption but her former husband Robert Van Anda, the father of the minor children, refused to consent.

Nancy and Robert were divorced in September of 1969. The judgment of divorce awarded joint custody of the two children to Nancy and Robert. Nancy, however, was awarded actual physical custody. Robert was awarded visitation rights and ordered to pay child support in the amount of $250 per month.

Petitioner declared in his petition that the father, Robert, had wilfully failed to pay child support for the period February 1, 1970, to October 7, 1974, the date of the filing of the petition.

Civil Code section 224 at the time of the filing of this petition[1] provided inter alia:

"A legitimate child cannot be adopted without the consent of its parents if living; however, after the custody of any child has, by any judicial decree, been given to the father, and the mother for a period of one year fails to communicate with such child when able to do so, or been given to the mother, and the father for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so, then the parent to whom custody has been given alone may consent to such adoption, . . ."

Here, the father, in response to a citation, appeared at the hearing on the issue of the need for his consent. At the opening of the hearing he filed with the court a satisfaction of judgment which Nancy had executed on June 27, 1974. That document recited that "The judgment [amounts due on child support] having been paid up to and including December 31, 1973, full satisfaction is hereby acknowledged up to December 31, 1973 . . . ." The trial court noting that one year had not elapsed between December 31, 1973 and October 7, 1974, when the present petition was filed, dismissed the petition on the grounds that the conditions of Civil Code section 224 had not been met. Petitioner appeals.

Because of its ruling the trial court did not take evidence on the issue of whether the father had for one year or more preceding the filing of the petition *willfully* failed to make the child support payments. It was the position of the trial court that section 224 was essentially a sanction to effect the enforcement of orders for child support and, payment having been acknowledged, the circumstances and timing of such payment were immaterial.

Petitioner made a lengthy offer of proof, the exact details of which are not necessary for the resolution of the issues on this appeal. The important allegations of petitioner are (1) the father failed to make child support payments from January 1, 1970, (2) in August of 1973, Nancy, the mother, engaged counsel and commenced proceedings to enforce the

[1]Civil Code section 224 now reads in pertinent part:

"A child having a presumed father under subdivision (a) of Section 7004 cannot be adopted without the consent of its parents if living; however, if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents, and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of such child when able to do so, then the parent having custody alone may consent to such adoption, . . ."

order, (3) in the course of the enforcement efforts a dispute arose over the disposition and sale of a piece of real property owned by the father, (4) in connection with that sale the title company that issued a policy of title insurance failed to note Nancy's judgment lien and Nancy then made a claim against the title company, (5) the title company made payments to Nancy pursuant to a tripartite settlement which included the title company's being subrogated to certain of Robert and Nancy's rights, and (6) the satisfaction of judgment was a part of this settlement.

The first issue presented is, simply stated, whether a father who has willfully failed to pay child support for over a year and who subsequently satisfies his obligation *indirectly* and *involuntarily* may yet, by withholding his consent, prevent the adoption of his child pursuant to the relevant provisions of Civil Code section 224. We think not.

Civil Code section 224 is more than a procedural device for enforcement of child support orders. The prime consideration underlying section 224 is the welfare of the child. The section is intended to facilitate adoption of a child and to provide it with real parents rather than parents in name only. (*Adoption of Ahmed,* 44 Cal.App.3d 810 [118 Cal.Rptr. 853]; *Adoption of Duckett,* 48 Cal.App.3d 244 [121 Cal.Rptr. 574]; *Adoption of Easley,* 240 Cal.App.2d 821 [50 Cal.Rptr. 33].)

Civil Code section 224 is fashioned for the situation where a parent has been guilty of conduct tantamount to abandonment or which is detrimental to the child-parent relationship. (*Adoption of Duckett, supra.*) This is borne out by the inclusion in the statute of the factor of the failure to communicate with the child.

In the case at bar the petitioner offered to prove that the father had wilfully failed to support the two children for over three years following the award of custody to the mother and that he only satisfied the obligation indirectly and as a result of the mother's concerted effort to compel the satisfaction. Under that state of facts, the mother's execution of a satisfaction of judgment is not a bar to invoking the provisions of section 224 of the Civil Code.

A father that has been guilty of failing to support his minor child for over a year after custody has been awarded to the mother, cannot prevent an adoption under Civil Code section 224 by making support payments after the filing of the petition for adoption. (*Adoption of*

*Burton,* 147 Cal.App.2d 125 [305 P.2d 185].) We conclude that the same rule should apply to the father who, *before* the filing of the petition, cures the delinquency only under compulsion.

█ The next issue presented is one which neither the trial court in its ruling nor the parties in their briefs on appeal addressed and that is the effect of the provisions in the original decree that awarded Nancy and Robert joint custody and Nancy physical custody. We requested additional briefing. Neither our own research nor that of the parties has disclosed any case dealing with the precise question.

In the past an award of joint custody to both parents and physical custody to one parent was generally the result of attempting to avoid the stigma of an inference of unfitness on the part of one parent and to facilitate future modification. With the advent of the Family Court Act and specifically Civil Code section 4600 through section 4603, the justification for such award is now rare. (6 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 4600-4601; 1 Cal. Family Lawyer (Cont.Ed.Bar) p. 564.) Where, however, such orders were or are made, as a practical matter, the decision as to physical custody is the critical one.

Civil Code section 224, although amended many times has throughout its history contained the word "custody" unmodified by any other adjectives such as "legal," "physical" or "exclusive." The most recent amendment in 1974 broadened the area of adoption with one parent consent to include the situation where the one parent has "custody" by agreement between the parents.

From this latter amendment we discern a legislative intent to use the word "custody" to mean "physical custody" for the reason that in the usual custody agreement between parents the physical control of the child is the essential consideration.

The cast of that part of section 224 with which we are here concerned is in terms of an award of custody to one parent rather than the deprivation of custody to the other.[2] In the case before us the award of joint legal custody was negative in nature in that it did not deprive either parent of existing legal custody. On the other hand *physical custody was affirmatively awarded to the mother.*

---

[2]Compare Civil Code section 224 which speaks of the situation "When such father or mother has been judicially deprived of the custody . . . ."

In *Burge* v. *City & County of San Francisco,* 41 Cal.2d 608 [262 P.2d 6], the court was called upon to interpret the phrase "care and custody" as used in Probate Code section 1431, which, as it then read, permitted a mother who had "care and custody" to compromise a minor's claim under certain circumstances. It was there stated at pages 617 and 618: "Custody embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings (Civ. Code, § 197) and the right to direct his activities and make decisions regarding his care and control, education, health and religion. [Citations.] . . . We believe the Legislature . . . *By 'custody,' . . . meant complete custody or all the rights involved in custody.* By 'care' it meant what has commonly been called 'physical custody' or the custodial rights involved in the physical care and control of the child. . . . Thus, if the parents are living separate or apart, and the mother has the care or physical custody of the child, she may compromise his claims even though she may or may not also have his complete custody." (Italics added.)

Although the court gave a restrictive meaning to the word "custody," it liberally interpreted the statute as a whole and in order to effectuate its purpose equated "care" with physical custody and read "care" or "custody" in the disjunctive.

Here we interpret the single word "custody" as used in a similar context[3] but in another statute. This statute also must be liberally construed to effectuate its purpose. That purpose is to promote the best interests of the minor and not necessarily to favor a natural parent. (*Adoption of Barnett,* 54 Cal.2d 370 [6 Cal.Rptr. 562, 354 P.2d 18].)

It seems clear that by enacting Civil Code section 224 permitting adoption on the consent of one parent with "custody" where there has been a failure of support and communication by the other, the Legislature was concerned not so much with the attributes of legal custody but more with the social and emotional factors involved in physical custody.

█ "The interpretation of a statute as a whole must be reasonable and 'when opportunity arises, made compatible with common sense and the dictates of justice.' " (*Adoption of Burton,* 147 Cal.App.2d 125, at

---

[3]The context is similar in that in each case the statute grants to one parent with "custody" authority to act in matters concerning the minor without concurrence by the other parent.

p. 131 [305 P.2d 185].) Common sense and the dictates of justice compel the conclusion that where one parent has physical custody either by judicial decree or as the result of an agreement between the parents the "custody" requirement of Civil Code section 224 is met even though that parent does not have sole and exclusive legal custody. (See *Younger v. Younger,* 106 Cal. 377 [39 P. 779]; *Adoption of Kelly,* 47 Cal.App.2d 577 [118 P.2d 479].)

The judgment is reversed.

Fleming, Acting P. J., and Beach, J., concurred.