[Civ. No. 44100. First Dist., Div. Four. May 9, 1979.]

In re the Marriage of SUSAN and DAVID NEAL.
SUSAN NEAL, Appellant, v.
DAVID NEAL, Respondent.

COUNSEL

Savitt & Adams, Beverly B. Savitt and Nancy Sevitch for Appellant.

Alan Kornfeld for Respondent.

OPINION

RATTIGAN, J.—The wife appeals from specified portions of an amended interlocutory judgment entered in a proceeding for dissolution of the parties' marriage.

Appellant commenced the proceeding by filing a petition for dissolution in 1975. It eventually came on for trial 19 months later. The parties had by then reached agreement on some aspects of a division of their marital property, but not on custody and support of their two small children, spousal support, and certain other issues. Pursuant to a stipulation between them, the trial court received extrinsic evidence on the unresolved issues, took them under submission, and entered an interlocutory judgment forthwith. The stipulated judgment ordered dissolution of the marriage, the agreed property division, and that "the Court hereby expressly reserves jurisdiction with respect to the issues of the determination of child custody, child visitation, spousal support, child support," and other matters upon which evidence had been received.

The court subsequently filed a notice of intended decision announcing its disposition of the issues reserved. Appellant requested formal findings of fact and conclusions of law. The court signed and filed findings and conclusions, and entered a "Judgment After Interlocutory Decree Re Issues Reserved To The Court," to both of which the parties had stipulated as to form.

The second stipulated judgment, which is in effect an amended interlocutory judgment of dissolution, was entered on December 21, 1977. The wife's appeal is from its paragraphs 1, 12 and 17.[1] Each of these

[1]We immediately perceived a problem because she thus appealed from portions of a judgment to which she had *stipulated.* (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 133-134 [p. 4129], 266-267 [pp. 4257-4258], 270-272 [pp. 4260-4261].) When queried about her standing to do this, her attorney informed us that the intent of the stipulation had been (1) to produce findings and a judgment conforming with the trial court's notice of intended decision, but (2) to reserve to either party the right to challenge the findings

paragraphs is quoted, and facts and other matters pertinent to it are recited, as we reach it in sequence below.

## Paragraph 1

The parties' two children were born on March 28, 1970, and April 6, 1975. They remained in appellant's custody during the 19 months between the commencement of the proceeding and the trial. This was with respondent's consent, but the parties were incessantly before the court, throughout the period, in continuing pretrial disputes over such issues as respondent's child visitation rights and the conduct of both parties in the presence of the children and as to each other.[2]

Appellant requested in her petition for dissolution, and in a pretrial statement, that "custody" of the children be awarded to her. In a pretrial statement filed by respondent, he requested that "custody" of the children be awarded to him and flatly alleged that appellant was "not a fit and proper person to have the[ir] custody" for stated reasons. At a midpoint in the trial, his attorney told the court that he (respondent) desired "joint legal custody" of the children. Appellant's counsel did not express approval of this request, and the issue of child custody was still in bitter dispute when it was taken under submission.

In the notice of intended decision, the trial court announced its resolution of the custody issue by stating that "legal custody" of the children would be awarded to the parties "jointly" but that "physical custody" would be awarded to appellant. Although the overlapping features of "joint" and "physical" custody had not been agreed upon by the parties, they were reiterated in the stipulated findings and conclusions.[3] (See fn. 1, *ante.*) Similar language was used in the first two

and conclusions, or the judgment, in any respect. Respondent's counsel does not dispute this statement. We accept it accordingly.

[2] These issues, and temporary spousal support, were the subjects of a continuing order to show cause obtained by appellant, at least four orders pendente lite, and proceedings in which respondent was held in contempt of court and given a suspended jail sentence. The full pretrial record need not be otherwise summarized, but it unmistakably demonstrates acute and ongoing bitterness between the parties.

[3] The findings included an additional statement that "[t]he minor children of the parties have been in the *custody* of petitioner [appellant] since the date of separation, and it is necessary and proper that said minor children remain in the *custody* of petitioner." (Italics added.) The afterpart of this language amounts to a finding that the best interests of the children would be served if they were to remain in appellant's "custody." There was no equivalent finding relative to their custody being awarded to the parties "jointly." This concept turned up in the conclusions of law, where the trial court stated: "I. *Legal custody* of the two minor children ... should be awarded *jointly* to petitioner and respondent. [¶]

paragraphs of the amended interlocutory judgment. Paragraph 1 (from which the appeal is taken) and paragraph 2 (which must be read with it) successively provide:

"1. *Legal custody* of the two minor children of the parties . . . shall be awarded *jointly* to petitioner [appellant] *and* respondent.

"2. *Physical custody* of the minor children shall be awarded to petitioner." (Italics added.)

Paragraph 2 is followed by elaborate provisions which spell out respondent's visitation rights in minute detail and control his conduct when the children are in his transient care. These provisions reflect the trial court's resolution of charges and countercharges exchanged by the parties in their acrimonious pretrial disputes on the issues of custody and visitation (see fn. 2, *ante*) and at the trial.

■ Challenging paragraph 1, appellant first contends that the trial court was without *jurisdiction* to award "legal custody" of the children to the parties, "jointly," for the stated reason that section 4600 of the Civil Code authorizes an award of child custody to "either" parent but not to both.[4] The reference to "either" parent, in subdivision (a) of the statute, appears as the first element in the "order of preference" to be followed by the awarding court. (See fn. 4, *ante.*) Its statement as a factor of "preference" does not diminish the court's *jurisdiction* to exercise the essential discretionary authority with which section 4600 invests it. That authority is conferred by the unqualified language which precedes the "order of preference" in the statute, and which empowers the court to "make such order" for child custody "as may seem necessary and proper." (See *ibid.*)

The substance of this broad language appeared in former section 138 of the Civil Code (the predecessor of § 4600) until the interparental Family Law Act was adopted effective January 1, 1970. (See Historical Note, 12A

II. *Physical custody* of said minor children should be awarded to petitioner." (Italics added.)

[4]Except where otherwise indicated, statutory references herein are to sections of the Civil Code which appear in the Family Law Act (div. fourth, pt. 5, commencing with § 4000). Section 4600 provides in pertinent part:

"4600. In any proceeding where there is at issue the custody of a minor child, the court *may,* during the pendency of the proceeding or, at any time thereafter, *make such order* for the custody of such child during his minority *as may seem necessary or proper. Custody should be awarded in the following order of preference:*

"(a) To *either* parent according to the best interests of the child." (Italics added.)

West's Ann. Civ. Code (1970 ed.) § 4600, pp. 319-320; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, §§ 69 [pp. 4590-4591]), 73 [pp. 4594-4595].) Throughout that period and since, the California decisions and other authorities have generally recognized that a trial court has *jurisdiction* to make an order awarding "joint" custody of two separated parents and "physical" custody to only one of them.[5] (See, e.g., *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 209 [259 P.2d 656]; *Burge* v. *City & County of San Francisco* (1953) 41 Cal.2d 608, 611, 618 [262 P.2d 6]; *Holsinger* v. *Holsinger* (1955) 44 Cal.2d 132, 133 [279 P.2d 961]; *Winn* v. *Winn* (1956) 143 Cal.App.2d 184, 185, 187 [299 P.2d 721]; *Harris* v. *Harris* (1960) 186 Cal.App.2d 788, 790 [9 Cal.Rptr. 300]; *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 76, 84 [98 Cal.Rptr. 501]; *Adoption of Van Anda* (1976) 62 Cal.App.3d 189, 191, 194-195 [132 Cal.Rptr. 878]; 1 Cal. Family Lawyer, *op. cit. supra,* § 15.24, p. 564; 4 Goddard, Cal. Family Law Practice (2d ed. 1972) § 140, p. 233; 6 Witkin, Summary of Cal. Law, *op. cit. supra,* Parent and Child, § 79, pp. 4600-4601; Bodenheimer, *Progress Under The Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications* (1977) 65 Cal.L.Rev. 978, 1009-1012.) There is no *jurisdictional* defect in the award made here.

■ Appellant further contends, however, that the trial court abused its discretion in overlapping its award of "physical custody" of the children, to her, with the award of custody to the parties "jointly." This contention requires an interpretation of the overlap, for which several of the decisions cited above provide no precedent. *Holsinger, Harris,* and *Russo* are distinguishable because a similarly overlapping award in each case was made pursuant to an agreement between the parties, which is conspicuously lacking here; because neither party appealed from the award when it was made; and because the appeal ultimately taken and decided, in each case, was from a subsequent order which modified only the "physical custody" feature of the award. (*Holsinger* v. *Holsinger, supra,* 44 Cal.2d 132 at pp. 133-136; *Harris* v. *Harris, supra,* 186 Cal.App.2d 788 at pp. 790-792; *In re Marriage of Russo, supra,* 21 Cal.App.3d 72 at pp. 75-76, 92-95.)

---

[5]This type of order is to be distinguished from one in which unqualified "custody" is awarded to each parent, but on a periodic back-and-forth basis which is usually calendared. (See, e.g., *Clarke* v. *Clarke* (1950) 35 Cal.2d 259, 260 [217 P.2d 401]; *Priest* v. *Priest* (1949) 90 Cal.App.2d 185, 186 [202 P.2d 561].) Custody thus awarded is not "joint," but has been called "divided." (1 Cal. Family Lawyer (Cont.Ed.Bar 1961) § 15.25, p. 564.) The distinction is significant and clear, although some writers have interchanged the terms "joint" and "divided" in referring to such arrangement. (See, e.g., Note, *The California Custody Decree* (1960) 13 Stan.L.Rev. 108, 112.) The custody awarded in the present case is "joint," in part, but not "divided." (See paragraphs 1 and 2 of the judgment, quoted in the text *ante.*)

The appeal in *Gudelj* was taken from an overlapping award, but the question decided by the Supreme Court pertained to the terms of the "physical custody" feature alone. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202 at pp. 207, 209.) In *Winn,* the mother appealed from an interlocutory judgment which awarded custody of the parties' children "jointly" but made no clear provision for their "physical custody." (*Winn* v. *Winn, supra,* 143 Cal.App.2d at pp. 186-187.) The Court of Appeal affirmed the award, but only after amending it to provide that the mother had "physical custody" in keeping with the perceived intent of the trial court. (*Id.,* at pp. 187, 190.)

For the various reasons indicated, these decisions involved specific details of overlapping awards but not their interpretation. The *Burge* and *Van Anda* courts were required to interpret such awards in collateral litigation where they became involved by reason of intervening circumstances. The controversy in *Burge* was preceded by a judgment of divorce which awarded "joint custody and control" of a child to both parents and his "personal custody" to the mother. (*Burge* v. *City & County of San Francisco, supra,* 41 Cal.2d 608 at p. 611.) The question before the *Burge* court was whether the mother had subsequently effected a valid compromise of a claim for damages held by the child, without the participation of the father who shared "joint custody and control" with her, pursuant to a statute (Prob. Code, § 1431) which then authorized the execution of such compromise by a minor's " 'father, or if . . . the parents of said minor are living separate and apart and his mother then has *care or custody* of said minor then his mother.' " (41 Cal.2d at p. 615 [italics added].) The court validated the compromise on the basis of its analysis of the term "care or custody" as used in the statute. Because the analysis addressed the situation presented here, it warrants quotation at some length. The court stated in pertinent part as follows (commencing at p. 617):

"*Custody* embraces the sum of parental rights with respect to the rearing of a child, including its care. It includes the right to the child's services and earnings (Civ. Code, § 197) and the right to direct his activities and make decisions regarding his care and control, education, health, and religion. [Citations.] . . . When the parents are living separate or apart, . . . there are apt to be not only frequent differences of opinion with respect to any of the matters involved in custody, but frequent resort to courts for their settlement. In such cases a court may conclude that the best interests of the child and due regard for the interests of the parents require that one or the other be given complete custody of the child. It may conclude that such action would be unjust, and unable like Solomon

to carve the child, it may carve out of the sum of custodial rights, certain rights to be exercised by each parent. *Thus it is common practice in divorce cases for the court to award 'legal custody' to one or both parents and 'physical custody' to one parent* . . . . Decisions made in the exercise of the rights awarded are not necessarily final, for the court's orders are subject to modification. [Citations.]

"We believe the Legislature had this practice in mind when it used the words 'care or custody' [in Probate Code section 1431]. *By 'custody,' it meant complete custody or all the rights involved in custody. By 'care' it meant what has commonly been called 'physical custody' or the custodial rights involved in the physical care and control of the child.* . . . Thus, if the parents are living separate or apart, and the mother has the care or *physical custody* of the child, she may compromise his claims *even though she may or may not also have his complete custody.*

"In the present case, the parents were living apart and the child lived with his mother. Under the divorce decree the parents had 'joint custody and control' but the mother had 'personal custody.' There can be no doubt that the award of personal custody gave her the physical custody and care of the child. Having the care of the child, she had authority under section 1431 of the Probate Code to compromise the claim in question." (*Burge* v. *City & County of San Francisco, supra,* 41 Cal.2d 608 at pp. 617-619 [italics added].)

In *Van Anda,* a prior judgment of divorce had awarded "joint custody" of the parties' children to both of them and "actual physical custody" to the mother. (*Adoption of Van Anda, supra,* 62 Cal.App.3d 189 at p. 191.) The mother's second husband undertook to adopt the children pursuant to Civil Code section 224, which then permitted adoption of a child by a stepparent, with the sole consent of the mother " 'to whom custody has been given,' " if the father " 'for a period of one year shall willfully fail to pay for the care, support and education of such child when able to do so . . . .' " (62 Cal.App.3d at p. 192.) After determining that the father had irrevocably brought himself within the one-year provision of the statute (*id.,* at pp. 192-194), the Court of Appeal followed the above-quoted language of the *Burge* court and held in effect that the consent of the mother alone would validate the proposed stepparent adoption because the prior award of "actual physical custody" of the children to her had invested her with their sole "custody" for purposes of Civil Code section 224. (*Id.,* at pp. 194-196.)

The holdings in *Burge* and *Van Anda* tend to indicate that the award of "physical custody" of the children to appellant invests her with their sole "custody" for such purposes as were presented in those cases, but no such issue is presented here. The persisting question is whether the trial court abused its discretion, as she contends, by adding the overlapping feature purporting to award "joint custody" to both parties.

The writers have widely criticized awards of "joint custody," as such, on the grounds that they serve no real purpose except to placate the parent deprived of de facto "custody" (see 1 Cal. Family Lawyer, *op. cit. supra,* § 15.24, p. 564); that they are inevitably detrimental to the interests of the affected children (Bodenheimer, *op. cit. supra,* 65 Cal.L.Rev. 978 at p. 1010); and that they invite such post-award controversies as materialized in *Burge* and *Van Anda.* (See 4 Goddard, Cal. Family Law Practice, *op. cit. supra,* § 140, p. 233.) A leading writer expresses the view that "joint custody" awards are anachronistic because the Legislature has now eliminated the former order of interparental preference from the custodial provisions of the Family Law Act. (6 Witkin, Summary of Cal. Law, *op. cit. supra,* Parent and Child, § 79, pp. 4600-4601.) In all events, there is prevailing opinion among the legal writers to the effect that an award of "joint custody" is unworkable unless the parents agree to it. (See 1 Cal. Family Lawyer, *loc. cit.*; Bodenheimer, *loc. cit.,* pp. 1010-1011.)[6]

There is no semblance of any such agreement in this record, which supports only the inference that none may be reached. (See fn. 2, *ante.*) To the contrary, it suggests the likelihood of recurrent disputes over such aspects of the ostensibly shared "custody" as the right to the "services and earnings" of each child (Civ. Code, § 197) and "the right to direct his activities and make decisions regarding his care and control, education, health, and religion." (*Burge* v. *City & County of San Francisco, supra,* 41 Cal.2d 608 at p. 617.) The so-called "joint custody" may produce parental disagreement, or other problems, if various statutes involving "custody," as such, come into play as the children grow older.[7] As in the past (see fn.

---

[6]Nonlegal writers tend to be more supportive of the "joint custody" concept in general, but they share the view that agreement between the parents is crucial. (See, e.g., Victor & Winkler, Fathers and Custody (1977) 136-137, 144; Levine, Who Will Raise The Children? New Options for Fathers (and Mothers) (1976) 62-63.)

[7]See, e.g., Civil Code, section 1714.1 (liability for "willful misconduct" of a minor imputed "to the parents having custody or control of the minor for all purposes of civil damages"); Civil Code, section 1714.3 (liability for injury caused by the discharge of a firearm similarly "imputed to a parent . . . having custody or control of the minor"); Education Code, section 49061 (certain rights involving public school records granted to "only the parent having legal custody of the pupil" if the parents are "divorced or legally

2), such disputes between these parents are likely to bring about "frequent resort to courts for their settlement." (*Burge* v. *City & County of San Francisco, supra,* at p. 618.) These prospects do not portend that the "joint custody" feature of the award will serve the best interests of the children, which is the paramount consideration controlling any custody award. (§ 4600, subd. (a); *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202 at p. 208; *Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 833-834 [109 Cal.Rptr. 80, 512 P.2d 304].) There is also no finding of fact that it will serve their interests now (see fn. 3, *ante*), and we perceive no evidence permitting such finding to be inferred.

We accordingly conclude that the overlapping "joint custody" feature of the award constitutes an abuse of discretion as appellant contends. We are not required to reverse the award with directions to redetermine the matter of "joint custody" because the award of "physical custody" to appellant gives her "custody" which is real, and which is supported by the findings (see fn. 3, *ante*) and the evidence. Its qualification as "physical," and the overlapping feature of "joint custody" in both parties, are ephemeral and essentially meaningless. We dispose of them by striking them in the modification ordered below. This disposition is without prejudice to respondent's right to pursue the objective of "joint custody," by way of further modification at the hands of the trial court, if he is so inclined. Our modification means only that he will bear the burden of proof in any such future proceeding. From our examination of the full record, we conclude that the burden properly rests upon him at this time.

*Paragraph 12*

The facts pertinent to the appeal in this regard are as follows: The parties were married in 1968. Respondent attended law school, and appellant worked as a medical secretary, during the early years of the marriage. Respondent has been a certified public accountant since 1969 and a member of the State Bar of California since 1972. Appellant has had three years of college. She had not been employed for five years before the trial, but was at that time seeking admission to a training program which could permit her to obtain certification as a registered nurse after two years. She had previously been denied admission to this program on two occasions.

---

separated"); Vehicle Code, section 17701 (requiring that a minor's application for a driver's license be signed and verified by both parents who "have custody of the minor" or by the "one parent" who "has custody"). See also Vehicle Code, sections 17707, 17708.

Appellant had stopped working because of her responsibilities with the small children and problems with her health. She described the health problems as a "spastic colon" and malnutrition resulting from her consequent inability to eat properly due to colonic pain. She also had a "bleeding problem" which is manifested by frequent hemorrhaging. She was under medical treatment for these ailments at the time of trial. She was 34 years old, and respondent was 35, at that time.

Consistent with the notice of intended decision and the findings and conclusions (see fn. 1, *ante*), paragraph 12 of the judgment provides in pertinent part: "Respondent shall pay to petitioner [appellant], . . . commencing September, 1977, the sum of Six Hundred Dollars ($600) per month as and for spousal support. Said support shall terminate on the death of either party, remarriage of petitioner, or December 31, 1980, whichever occurs first."

■ Appellant contends that the trial court abused its discretion in ordering termination of the spousal support obligation, "without reserving jurisdiction" of the subject pursuant to section 4801, subdivision (d), upon the stated ground that "there is no evidence in the record to show that . . . [she] . . . will be self-supporting at the termination date" of December 31, 1980.[8] In the decision principally cited for this argument, the Supreme Court sustained a similar contention, upon comparable facts, where the trial court had failed to reserve jurisdiction of spousal support in providing for its termination, after 11 years, in a judgment dissolving a marriage of 28 years' duration. (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 440, 441-454 [143 Cal.Rptr. 139, 573 P.2d 41].) The

---

[8] The pertinent context of section 4801 provides:

"4801. (a) In any judgment decreeing the dissolution of a marriage . . . , the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties: [¶] (1) The earning capacity and needs of each spouse. [¶] (2) The obligations and assets, including the separate property, of each. [¶] (3) The duration of the marriage. [¶] (4) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse. [¶] (5) The time required for the supported spouse to acquire appropriate education, training, and employment. [¶] (6) The age and health of the parties. [¶] (7) The standard of living of the parties. [¶] (8) Any other factors which it deems just and equitable.

". . . . . . . . . . . . . . . . . . . . . . .

"(b) Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party.

". . . . . . . . . . . . . . . . . . . . . . .

"(d) An order for payment of an allowance for the support of one of the parties *shall terminate at the end of the period specified in the order and shall not be extended unless the court in its original order retains* jurisdiction." (Italics added.)

court has recently reached the same result, quoting and following *Morrison,* where a judgment dissolving an 18-year marriage provided for spousal support but ordered its termination in a few years without reserving jurisdiction of the subject. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 90-91 [154 Cal.Rptr. 413, 592 P.2d 1165].)

■ "A trial court should not terminate jurisdiction to extend a future support order after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to adequately meet his or her financial needs at the time selected for termination of jurisdiction. In making its decision concerning the retention of jurisdiction, the court must rely only on the evidence in the record and the reasonable inferences to be drawn therefrom. It must not engage in speculation. If the record does not contain evidence of the supported spouse's ability to meet his or her future needs, the court should not 'burn its bridges' and fail to retain jurisdiction." (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 453; *In re Marriage of Epstein, supra,* 24 Cal.3d at pp. 90-91.)

■ The present marriage had subsisted for only seven years when the parties separated, and for approximately nine years when the proceeding was tried, but neither time span made its duration other than "lengthy" as a matter of law. The "duration of the marriage," moreover, was only one of the several circumstances which the trial court was required to consider in "making the award" of spousal support. (See § 4801, subd. (a), quoted in fn. 8, *ante*; see, particularly, subds. (a)(1), (4), (5) and (6), *ibid.*) Nothing in the record reasonably supports the inference that appellant will be self-supporting when her spousal support terminates on December 31, 1980 (which will occur only 42 months after the trial and 36 months after the judgment was entered). The following language from *Morrison* may be squarely applied with the indicated paraphrasing: "In the present case, no showing was made that the wife would be self-supporting at the end of [three] years. All the evidence in the record is to the contrary. The wife has no significant job skills or work history . . . . Further, the record indicates the wife's ability to obtain full-time employment may be hampered by medical problems. . . . [¶] The trial court abused its discretion by divesting itself of jurisdiction to award future spousal support after [three] years without any evidence in the record that the wife would be able to provide for herself at that time. Accordingly, the portion of the judgment which fails to retain jurisdiction after [three] years must be reversed." (*In re Marriage of Morrison, supra,* 20 Cal.3d at p. 454.)

Reversal is not required here because we hold only that the trial court erred in not reserving jurisdiction to award spousal support after December 31, 1980; the portion of the paragraph 12 award terminating spousal support on that date remains valid; and our disposition need require only that the trial court "retain jurisdiction to modify that award if economic circumstances warrant." (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 91, fn. 15.) We effect the necessary disposition in the modification ordered below.

### *Paragraph 17*

Paragraph 9 of the judgment provides that respondent shall pay appellant $150 per month "for the support of each minor child, until each of said minor children reaches the age of majority, dies, marries, or becomes emancipated or further order of the court." Paragraphs 10 and 11 provide that he shall maintain a $15,000 life insurance policy, on his own life, "for the benefit of" each child "so long as he has an obligation to support said child." In this context, paragraph 17 states: "Respondent shall claim the two minor children as dependents for income tax purposes."

■ Appellant contends that the trial court was without jurisdiction to make the paragraph 17 order because neither party requested it. "A party is entitled to 'any and all relief which may be appropriate under the scope of his pleadings and within the facts alleged and proved, irrespective of the theory upon which they might be alleged.' [Citations.]" (*Estrin* v. *Superior Court* (1939) 14 Cal.2d 670, 678 [96 P.2d 340]; *Potrero Homes* v. *Western Orbis Co.* (1972) 28 Cal.App.3d 450, 456 [104 Cal.Rptr. 633].) The present parties raised the issue of child support in the pleadings and in the extensive pretrial proceedings. (See fn. 2, *ante.*) ■ "Circumstances to be considered by the trial judge in awarding . . . child support are the needs of the parties and the ability to meet those needs, including property owned, obligations to be met, ability to earn and actual earnings." (*Van Diest* v. *Van Diest* (1968) 266 Cal.App.2d 541, 545 [72 Cal.Rptr. 304].) ■ Respondent's income tax liability was an "obligation to be met" which was subject to consideration by the court. In all events, the issue of child support was contested throughout the proceedings. There is accordingly no merit to the contention that the trial court exceeded its *jurisdiction* in making the paragraph 17 order on that issue. (1 Witkin, Cal. Procedure, *op. cit. supra,* Jurisdiction, § 185, pp. 714-715.)

The trial court has thus validly granted respondent the right to "claim the two minor children as dependents for income tax purposes," but whether he may qualify to do this depends upon pertinent provisions of the federal and state income tax laws. (See, e.g., Int. Rev. Code, § 152, subd. (e); Rev. & Tax. Code, § 17059.5, subds. (a), (b); Representing Clients in Spousal and Child Support Proceedings: A Major Update (Cont.Ed.Bar 1978) §§ 3.35-3.37, pp. 129-133.) That prospect is not before us, and we reach no questions pertaining to the implementation or enforcement of paragraph 17. The just-cited income tax statutes themselves bear mentioning only because appellant has undertaken to challenge them on constitutional grounds. It is by no means clear that she may do this on the present appeal, the challenge is unclear in itself, and its premises are not supported by the record. We need not discuss it further; for any and all of the reasons mentioned, we deem it without merit.

The judgment entered on December 21, 1977, is modified (1) by striking paragraphs 1 and 2 therefrom and inserting in their place a single paragraph reading: "1. Custody of the two minor children of the parties, Gregory M. Neal, born March 28, 1970, and Taylor S. Neal, born April 6, 1975, is hereby awarded to petitioner." The judgment is further modified (2) by renumbering its successive paragraphs in sequence following new paragraph 1 and (3) by amending the second sentence to new paragraph 11 (formerly par. 12) to read: "Said support shall terminate on the death of either party, remarriage of petitioner, or December 31, 1980, whichever first occurs; provided, however, that the court expressly reserves jurisdiction to make any and all appropriate orders relative to spousal support before, on or after December 31, 1980." As so modified, the judgment is affirmed in all respects reached by the appeal. Appellant shall recover her costs on appeal.

Caldecott, P. J., and Drummond, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.