Leonard L. Finz, J.
The major issue to be determined is whether “joint custody ” of the two infants, ages three and six, can be awarded to the plaintiff mother and to the defendant father, in this action for divorce.
Amazingly enough, there is an absence of any in-depth discussion relative to “joint custody ” in any of the leading texts. With the exception of Woicik v. Woicik (66 Misc 2d 357), generally cited for its opinion addressed to alimony, there is not a single reported case in the State of New York addressed specifically to the issue of “ joint custody ”. The power, however, to award such custody appears to be consonant "with statutory law — given the proper circumstances.
Historically, the father who sought custody was regularly the victor in such proceedings. This tradition evolved from the common-law doctrine of primogeniture which asserted the supremacy of the male in all matters, including the ownership of property and chattels. The advent of partial emancipation of women in the 19th century brought with it statutory and decisional reform, in order to secure equality with respect to custodial rights. The legislative response to this new emergence of “ women’s rights ” produced the enactment of section 81 of the Domestic Relations Law, which states: “ A married woman is a joint guardian of her children with her husband, with equal powers, rights and duties in regard to them.”
By the enactment of section 81 of the Domestic Relations Law, the common law, which emerged from old English doctrines that declared the father as the natural guardian of the infant charges, was finally and permanently interred. (People ex rel. Barry v. Mercein, 3 Hill 399.) Today, society’s evolution, decisional law, and legislative enactment, have empowered *132 the court to determine matters of custody based upon the interests of the infants involved. (Van Dyke v. Van Dyke, 278 App. Div. 446.) This power in the court is now codified in section 240 of the Domestic Relations Law authorizing such directions for custody “ as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child. In all cases there shall be no prima facie right to the custody of the child in either parent.” (See, also, Domestic Relations Law, § 70.)
Clearly, then, the parties in a matrimonial action, prior to any judicial determination directing custody, are cloaked with the mantle of “ joint custody ” of the infant issue. Therefore, if both parents are fit and the circumstances so warrant, the interests of the infant may dictate that custody not be removed from one fit parent. It can certainly be argued, therefore, that if the court has jurisdiction to award custody to either parent under section 240 of the Domestic Relations Law, it can grant such award “ jointly ” to both parents. There appears to be no clear legal impediment to this conclusion.'
The concept of “ joint custody ”, while novel, is neither abhorrent nor alien to the courts, notwithstanding the absence of either text or reported case-law comment. An example of this can be found in Lindey, Separation Agreements and Ante-Nuptial Contracts (1967 ed., vol. 1, § 14). In section 14 it is stated under the héadnote “ Joint, Divided and Split Custody ” : “ 1. Joint Custody: Although the child resides most of the year with one parent, the spouses have joint control of its care, upbringing and education, and equal voice in decisions pertaining to its health, religious training, vacations, trips and the choice of schools, summer camps, etc.”
The above is then followed by a differentiation as to joint custody, divided custody and split custody. In “ Law and the Family ”, the well known treatise by Henry H. Foster and Doris Jonas Freed, the index lists “ Joint Guardianship [of] Parents, §§ 29:1, 6 ”, and indicates as follows (1966 ed., vol. 2 29.6):
“ The Domestic Relations Law now provides that a married woman is a joint guardian of her children with her husband, with equal powers, rights, and duties in regard to them, so as between parents neither has an inherently superior right to the custody of the child. Furthermore, it is now provided in the Domestic Relations Law, that in all cases ‘ there shall be no prima facie right to the custody of the children in either parent ’.
*133 • “ The Domestic Relations Law also provides that the court must give such direction for the custody and care of children and the right of visitation, and for their education and maintenance, ‘ as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child ’
Although the courts have used the concept of “ joint ”, “ divided ” or “ split ” custody, many of those decisions are to be found in unreported Family Court cases, which have been appealed on other issues.
Other jurisdictions have embraced the concept of “ joint ” custody, as witness Winn v. Winn (143 Cal. App. 2d 184). In this 1956 California case, the court held (p. 187): “ It will thus be seen that the decree formally gives joint custody [the lower court decision] * * * to the parties * * * we cannot regard the custody award as unreasonable. The court’s main concern iiynaking a custody award is the best interest of the children and the court has a wide discretion in this matter.”
Also, in 1956, the State of Rhode Island found “ joint custody ” to be a viable concept. In the case of Loebenberg v. Loebenberg (85 R. I. 115), an appeal was made from a trial court’s - determination that a prior^'determination awarding joint custody was not to be changed. The appellate court indicated that it recognized the fact that the general rule in Rhode Island was based upon the case of Kelley v. Kelley (77 R. I. 229, 232), which stated that generally speaking the controlling factor in these cases was “ the best interest of the child fqr the time being ”, The court indicated further in Loebenberg that (p. 121): “ I find, however, that this provision [‘ joint custody ’] will not in its application adversely affect the child’s welfare ”.
Ten years, later, the court, in Zinni v. Zinni (103 R. I. 417, 421), cited Kelley and Loebenberg approvingly, stating that: “ The child’s best interest would be served if he placed her in their joint custody ”.
A New York case treating mildly the subject here under consideration, as an incident of the relief granted, concluded: “ I have nonetheless concluded to award custody of John, Jr., to both and thus afford the child an opportunity to adjust himself, in due time, to one or both parents.” (Ross v. Ross, 4 Misc 2d 399, 405.)
As has been stated earlier, the award of “ joint custody ” must be clearly shown to be in the best interests of the infant. In the instant case, as indeed in all custody matters, the trauma that flows from the dissolution of the marriage should be pre *134 vented whenever possible to the extent that the court must be ever vigilant in insulating the infants from injury resulting from such trauma. This can be accomplished by providing maximum accessibility as between parent and child. In this regard, the history of marital disputes has been fraught with the spawning of “ needless round[s] of tension and conflict until ‘ death do them part (Winch, McGinnis & Barringer — Selected Studies in Marriage and the Family, Holt, Reinhart & Winston, N. Y. 1963.) As such, many children have been innocent dupes and victims of those parents who have used their custodial rights as bargaining agents and instruments of intimidation in seeking an unfair advantage over the other parent. Therefore, where joint custody could properly be employed, would it not serve to remove the psychological “ abrasiveness ” that one parent may utilize as against the other ?
In the instant case, both parents love their children. Both are fit parents. Both want doggedly to retain custody of their children. In addition, both agree that physical custody of the children should remain with the father, with liberal visitation rights .awarded to the mother. In the posture of this case, were this court to refuse to award “ joint custody ” to both parents, the custody issue would have to be litigated in what could become a most caustic atmosphere. The emerging bitterness and emotional explosions inherent in these tense matters would unquestionably ' contaminate the future relationship of the parents. Such contamination would infiltrate and spread eventually to the children, with its resulting negative effect on their future security, stability and sense of well being. Clearly, such an unfortunate result would be most antagonistic to the very interests that this court is sworn to protect.
Moreover, common sense and experience suggest that the traumatic upheavals brought about by a “ broken home ” are difficult enough for young children, or even older ones, to understand and accept. By contract the concept of “ joint custody ” can serve to give that measure of psychological support and uplift to each parent which would communicate itself to the children in measures of mutual love, mutual attention and mutual training. The string of security and stability that would flow from mother to child_to father, with “ joint custody ” serving as the emotional fulcrum, would but. strengthen the parent-child unit in what otherwise could be a completely destroyed marital home. The parents of these young children *135 expect no less from this court than the award to them of “ joint custody ”. The court, in the interests of justice and the infants involved, can order no less. Let “ joint custody ” therefore issue in accordance with this decision.