OPINION OF THE COURT
Felice K. Shea, J.
In this action for divorce, the court must determine whether or not to order joint custody of the parties’ infant daughters, ages five and seven. The plaintiff mother seeks sole custody of *643 the children, with liberal visitation to the defendant father. Defendant urges that custody be awarded jointly and that the children divide their time equally between the two homes. In the alternative, the father requests that he be the custodial parent.
Joint custody is an appealing concept. It permits the court to escape an agonizing choice, to keep from wounding the self-esteem of either parent and to avoid the appearance of discrimination between the sexes. Joint custody allows parents to have an equal voice in making decisions, and it recognizes the advantages of shared responsibility for raising the young. But serious questions remain to be answered. How does joint custody affect children? What are the factors to be considered and weighed? While the court should not yield to the frivolous objections of one party, it must give thought to whether joint custody is feasible when one party is opposed and court intervention is needed to effectuate it. In the end, as in every child custody decision, it is the welfare of the children which governs and each case will turn on its individual facts and circumstances.
Plaintiff and defendant are both 30 years old and had been married eight years when they separated. The father is a doctor; the mother is a college graduate who works as a customer service representative in a bank. Dr. Dodd lives in a comfortable eight-room apartment near his daughters’ schools. Mrs. Dodd has remained in the marital apartment. At the insistence of the father, the children have, for the past year, spent exactly half their time with each parent — Mondays, Wednesdays and alternate weekends from Friday through Sunday with the father; Tuesdays, Thursdays and alternate weekends with the mother.
Defendant did not contest plaintiff’s fitness to have custody at trial. His position is that joint custody promotes close nurturing by both parents. He describes himself as stable and competent whereas he views the children’s mother as nervous, indecisive and easily frustrated. Defendant seeks joint responsibility and equal voice in the decisions affecting his daughters, as well as a continued 50-50 division of the children’s time. He maintains that the children have flourished under the shared custody arrangement and asks the court to order its continuance.
Plaintiff, on the other hand, testified to the friction between the parties, the threats, harassment and intimidation she has *644 suffered, the father’s unwillingness to share in the care of the children while he lived at home, and his exposure of the children to his romance with her erstwhile friend. Plaintiff sees the joint custody arrangement, in which she acquiesced with reluctance, as failing to meet the needs of the children and she asks the court to award her sole custody with liberal visitation to defendant.
The court finds that the marriage of Dr. and Mrs. Dodd has been troubled almost from the start and that the hostility between the parties is deep and of long duration. The court also finds that both parents have a loving and close relationship with the children and that both are fit in that they are free of significant emotional problems and willing and able to function well as parents. Joint custody can be considered only where both parties are fit parents.
No statute expressly authorizes an award of joint custody. However, section 240 of the Domestic Relations Law provides that the divorce court "must give * * * direction, between the parties, for the custody * * * of any child of the parties, as * * * justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child. In all cases there shall be no prima facie right to the custody of the child in either parent.”[1] In the few reported cases where joint custody has been found to be in the child’s best interests, the courts have not hesitated to infer, expressly or impliedly, the power to give custody jointly to both parents. (See, e.g., Perotti v Perotti, 78 Misc 2d 131; Woicik v Woicik, 66 Misc 2d 357; Ross v Ross, 4 Misc 2d 399; Odette R. v Douglas R., 91 Misc 2d 792; Krois v Krois, NYLJ, Oct. 14, 1977, p 13, col 5; Levy v Levy, NYLJ, Jan. 29, 1976, p 11, col 3; Schack v Schack, NYLJ, Aug. 21, 1974, p 15, col 8.)
Joint custody has been defined as giving both parents "legal responsibility for the child’s care and alternating companionship.”[2] An examination of the joint custody cases in New York[3] reveals that there has been no uniform application *645 of the term "joint custody” and no single arrangement which results when a joint award is made. Joint or divided custody decrees generally give both parents legal responsibility for the child’s care, but when physical or actual custody is lodged primarily in one parent, custody may be "joint” in name only.
In the Perotti case, the parents were given shared responsibility, with physical custody to the father, visitation to the mother. In Woicik, the child was to be in boarding school in the winter, camp in the summer, with the parents sharing only the child’s vacation time. In Ross, custody was awarded to both parties on a temporary basis, apparently to "afford the child an opportunity to adjust himself, in due time, to one or both parents”. (Ross v Ross, 4 Misc 2d 399, 405, supra.) The actual division of time was left to the parties, and if the parties were unable to agree, then sole custody was to be given to the father with weekend visitation rights to the mother. In Odette R. v Douglas R. (supra), the court directed the parties to make all decisions jointly for the benefit of the children, but divided physical custody by allowing the children to live with their father and visit their mother. In Krois, there was court ordered joint guidance for a boy of 17 and a handicapped girl of 20, but both children were to remain physically with the father. In the Levy case, the court gave joint control of a 13-year-old boy to both parents, but directed that he stay with his mother for two years to give him a chance to decide where to live. In the Schack casé, where joint custody was awarded, the children were to live with the mother from Monday through Friday, the father on Saturday and Sunday, with vacations to be split.
It is well recognized that the children of divorce are subjected to severe strain, and that children often experience loss of security and feelings of rejection as a concomitant of their parents’ separation.[4] * Experts in the field have expressed opposition to divided custody on the ground that change and discontinuity threaten the child’s emotional well-being.[5] It is argued that "joint custody between parents usually requires *646 that 'shuttling back and forth’ of children which must inevitably lead to the lack of stability in home environment which children require.”[6] Moreover, joint or divided custody may exacerbate the adults’ use of the children to defeat each other in defiance of the children’s interest in stability, serenity and continuity. In attempting to maintain positive emotional ties to two hostile adults, children may become prey to severe and crippling loyalty conflicts.[7]
The proponents of joint custody contend that fathers relegated to seeing their children only intermittently experience feelings of deep loss and often react by limiting their involvement with their children.[8] They argue further that there is no scientific data for the de facto preference in favor of the mother[9] and that fathers in today’s dual career families are equally nurturant and competent to care for their offspring.[10] They contend that a child needs a sustained involvement with both his parents and that the conventional single parent custody arrangement "tends to make ex-parents of fathers, painfully deprived creatures out of the children and overburdened people out of mothers.”[11]
These are persuasive arguments. No postdivorce custody arrangement will give to children two loving parents, living together, devoted to each other and to the children’s welfare. Joint custody, under the proper circumstances, may be the closest it is possible to come to the shattered ideal. The courts, in dealing with the difficult issues raised by child custody litigation, should consider joint custody as an option, particularly in performing their little noted but frequently exercised role as mediator before trial.
However, when one parent resists joint custody and refuses to be persuaded that it is workable, what will be the result for *647 the children when it is ordered by the court? There appear to be no social science studies that will answer this question. The most ardent professional proponents of joint custody assume co-operation between parents and agreement about child rearing practices as basic requirements for joint custody.[12] It is hardly surprising that joint custody is generally arrived at by consent.
As is noted infra, the parties herein have made child rearing a battleground; agreement has been totally absent. Defendant urges that a court order, together with an admonition to the parties that they should co-operate in the children’s interest, will end the hostilities. No authorities, legal or otherwise, have been cited in support of this proposition. The fact seems to be that court decreed joint custody often comes back to court for modification. (See, e.g., Perotti v Perotti, 78 Misc 2d 131, supra, relitigated and custody awarded to defendant father in unreported decision dated July 18, 1975; Rechtschaffen v Rechtschaffen, NYLJ, Jan. 6, 1978, p 7, col 1; see, also, Soto v Soto, 57 AD2d 818; Lyritzis v Lyritzis, 55 AD2d 946; Calder v Woolverton, 50 AD2d 587.)
Joint custody has been tried by the Dodd family, and in the court’s view, it has failed. For 14 months, the parents have lived apart without either a separation agreement or a court order of custody. During that time they have shared in all decisions, and for most of that time they have divided physical custody equally. In all areas, in matters both major and minor, there has been conflict. There have been disagreements over medical care and psychotherapy, over the children’s clothing, over discipline, over money, over the children’s attendance at family functions. Overt, bitter hostility, criticism of each other, as well as angry words and obscenities have been observed repeatedly by the children.
Dr. Dodd has been uncompromising and Mrs. Dodd, while a participant in the frequent acrimonious quarrels, has acquiesced to her husband’s demands in large measure out of fear that her husband’s threats to remove the children, to prove *648 her an abusive mother and to withhold support, could be carried out with impunity.
The court heard testimony from two psychiatrists. Dr. A., called by the plaintiff, examined both parents and both children. In contrast, the defendant’s expert, Dr. B., examined only the defendant and the two girls. For this reason primarily, but also because of Dr. A.’s long and distinguished career in the field of child psychiatry, it is his testimony that is entitled to the greater weight.
Dr. A. testified that the children were anxious and not coping well with their complex and shifting routines. Although he saw no evidence of serious emotional problems, he found signs of precocity related to stress in both children and sleep and behavior problems in Helen. Both children are receiving therapy. Dr. B., who is Eliza’s therapist, testified that Eliza is sad, lonely, unable to make friends, has anger which she has repressed, suffers a great deal and is concerned over the relationship between her parents. He found both girls troubled. In Dr. A.’s opinion, joint custody is unworkable for the Dodds, and he recommended one principal home with Mrs. Dodd as the custodial parent. Dr. B. agreed that the present joint custody situation is not working well, but viewed it as the least detrimental alternative.
The evident distress of Eliza and Helen is an unfortunate fact of life for the children of divorce. It is hard, indeed impossible, for the court to separate out the part played in their misery by their parents’ separation and the part played by the joint custodial arrangement. The physical shuttling back and forth, the parents’ tensions and constant arguments, exacerbated by a situation in which neither has the deciding voice, surely must be responsible in part.
To the court, it is clear that for this family, joint custody has been a failure and that court ordered joint custody would be equally doomed. The question then to be decided is which of two fit parents will be the better custodian. The court finds that Mrs. Dodd is the more suitable.
In the first place, Mrs. Dodd has been the primary caretaking figure to these little girls since birth. Dr. Dodd’s extensive involvement in the lives of his children is relatively recent, dating from the parties’ separation. Award of custody to Mrs. Dodd will preserve the children’s well-recognized need for continuity. (Berlin v Berlin, 21 NY2d 371, 376-377, cert den *649 393 US 840; People ex rel. "XX” v "ZZ”, 43 AD2d 196, 198; Dintruff v McGreevy, 42 AD2d 809, affd 34 NY2d 887; Goldstein, Freud and Solnit, Beyond the Best Interests of the Child, p 31 et seq.
Moreover, the court believes that placing custody with Mrs. Dodd will maximize the role which both parents should play in their children’s lives. The testimony reveals that Dr. Dodd has a low opinion of his wife as a person and as a mother, which he has not hesitated to convey to his daughters. With the final right to make decisions lodged with Dr. Dodd, it can be expected that he would give very little weight to the views of his ex-wife. Mrs. Dodd, on the other hand, is entirely competent to act as the final arbiter in matters affecting the children, and in addition, she respects her husband, knows him to be a good father, and would rely on him for valuable assistance in making decisions as to education, medical and psychiatric care and general welfare. Mrs. Dodd has also shown herself to be the more flexible and conciliatory with regard to physical custody of the children and can be expected to co-operate fully with liberal visitation and frequent contact between her daughters and their father.
In addition, the court concludes that of the two parents, it is Mrs. Dodd who is the more sensitive to the needs of the children. The credible evidence shows that upon leaving his family, Dr. Dodd plunged immediately into an intimate relationship with a neighbor who was a former family friend, that the friend was present much of the time while the children were with their father, and that she slept at Dr. Dodd’s home overnight while the children were also there. According to Dr. A., Dr. Dodd’s seeing another woman in the presence of his children intensified the stress they experienced from the separation. The court expresses no moral judgment on Dr. Dodd’s extramarital relationship. However, choosing to have his paramour stay overnight when his children were with him demonstrated a disregard for his daughters’ need for time to adjust to the transfer in their father’s affection away from their mother to another woman. Mrs. Dodd, on the other hand, has shown maturity in coping with her own problems and an ability to put her children’s welfare ahead of her own.
Defendant challenged Dr. A.’s testimony that one of the reasons for favoring Mrs. Dodd as the custodial parent was that she serves her daughters’ needs as a role model. The court is persuaded that the role of the father is no less *650 important in his daughters’ lives than that of the mother.[13] Girls need to learn not only what it will be like to be a woman, but what to look for and expect in a man. In the Dodd family, the father has dominated the mother, has forced his views on her, threatened her and belittled her. It is important, for the children’s emotional health, that they view their mother as the competent person she has shown herself to be and their father as a person who can treat women with kindness and respect. With Mrs. Dodd as the custodial parent, the girls will have a better chance to form positive images of both parents.
The children were interviewed separately in camera in the absence of counsel. (Matter of Lincoln v Lincoln, 24 NY2d 270.) While the wishes of children must be considered (Feldman v Feldman, 58 AD2d 882; People ex rel. Brussel v Brussel, 279 App Div 859), the weight to be given to their desires is in the court’s discretion and the custodial preferences of young children are not determinative. (Obey v Degling, 37 NY2d 768; Pino v Pino, 57 AD2d 919; 2 Foster and Freed, Law and the Family, § 29.12.)
Eliza and Helen each expressed the desire to live with both parents and both said they were satisfied with the present scheme of shared custody. These views are consistent with the children’s love for both parents, and with what the plaintiff’s expert characterized as a typical childish wish that separated parents will reunite. The interviews with the children reinforce the court’s finding that neither parent is unfit and that both parents should be involved in their upbringing, but the children, at ages five and seven, are too young to guide the court on the issue of what custodial arrangement will best serve their needs.
No court can decree an arrangement in which the children of divorced parents can be guaranteed to flourish. As the Court of Appeals has said, speaking of children in a case before it, "The courts cannot assure the happiness and stability of these children; that only their parents could have done, and, hopefully, can still do.” (Matter of Nehra v Uhlar, 43 NY2d 242, 252.)
Custody is awarded to the plaintiff who shall have the right to make all decisions affecting the children upon consultation *651 with the defendant. The defendant is to have liberal visitation. If the parties cannot agree on visitation, the court will make appropriate direction in the judgment to be settled herein.

. See, also, sections 70.80 and 81 of the Domestic Relations Law.

. Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody and Excessive Modifications, 65 Cal L Rev 978, 1009. Cf. 1 Lindey, Separation Agreements and Ante-Nuptial Contracts (14-60-14-61), differentiating between joint custody (child resides most of year with one parent, spouses have joint control), divided custody (each spouse has child for part of year and control while child is in his or her custody) and split custody (children split between parents).

. Joint custody cases in other jurisdictions are collected in Note, Divided Custody *645 of Children After Their Parents’ Divorce (8 J Fam L 58, 65-68), Clark, Law of Domestic Relations (pp 590-591) and Ann., 92 ALR2d 695.

. Roman, the Disposable Parent (15 Conciliation Courts Rev, No. 2, Dec., 1977, p 6); Gardner, Separation of the Parents and the Emotional Life of the Child (40 Mental Hygiene 53).

. Goldstein, Freud and Solnit, Beyond the Best Interests of the Child, pp 37-38.

. 2 Foster and Freed, Law and the Family (§ 29:6A [1976 Supp]).

. Goldstein, Freud and Solnit, Beyond the Best Interests of the Child, p 12.

. Greif, Child Absence: Fathers’ Perceptions of their Relationship to their Children Subsequent to Divorce. Unpublished doctoral dissertation, Adelphi University, 1977. Of the 40 fathers interviewed for this study, 10 had joint custody, none pursuant to court order.

. See Roth, The Tender Years Presumption in Child Custody Disputes (15 J Fam L 423); People ex rel. Watts v Watts (77 Misc 2d 178); Ann., 70 ALR3d 262.

. See, e.g., Molinoff, Joint Custody: Victory for All? (New York Times, March 6, 1977, XXII, 18:1) and Baum, What to Do When You Both Want Custody (New Woman Magazine, Sept.-Oct., 1977, p 32).

. Roman, The Disposable Parent (15 Conciliation Courts Rev, No. 2, Dec., 1977, p 5).

. See, e.g., Roman, The Disposable Parent (15 Conciliation Courts Rev, No. 2, Dec., 1977, p 7) O’Neil & Leonoff, Joint Custody: An Option Worth Examining (Perception, Nov./Dec., 1977, pp 28, 29) states: “[Joint custody] is a decision that must be arrived at by the couple themselves — obviously a court could not order a joint arrangement.” The articles in a popular press cited in Molinoff, Joint Custody: Victory for All? (New York Times, March 6, 1977, XXII, 18:1) and Baum, What to Do When You Both Want Custody (New Woman Magazine, Sept.-Oct., 1977, p 32) describe successful joint custody arrangements mutually arrived at.

. For a collection of authorities on the psychological and sociological importance of the father-child relationship, see Roth (15 J Fam L 423, 448-457); see, also, Note, Divided Custody of Children After Their Parents Divorce (8 J Fam L 58, 60).