OPINION OF THE COURT
Chief Judge Breitel.
In a proceeding, described as one to modify a judgment of *587 divorce obtained by the husband, petitioner father seeks custody of his two sons, now aged six and seven-and-a-half. Until this proceeding, respondent mother had custody under a separation agreement which survived a judgment of divorce. Special Term, Supreme Court, awarded custody to the father, but a unanimous Appellate Division reversed, and awarded custody to the parents jointly. The father appeals.
At issue is whether the custody of children of tender years may be entrusted, jointly, to parents persistently and severely embattled.
The order of the Appellate Division, insofar as appealed from, should be reversed, and a new hearing held with utmost expedition. Entrusting the custody of young children to their parents jointly, especially where the shared responsibility and control includes alternating physical custody, is insupportable when parents are severely antagonistic and embattled. On the two-year-old hearing record before this court, plagued as it is with hopelessly conflicting testimony on vital facts and issues, it would be improvident to choose between the contradictory findings of the courts below. Consequently a new hearing is required.
Petitioner father, a successful lawyer, married respondent in 1967. The eldest of their three children, a daughter, was born to the mother before she met petitioner, but was later adopted by him. Although he initially sought custody of his adopted daughter, the father did not appeal from Special Term’s award of her custody to the mother. Hence, only custody of the parties’ two young sons remains contested.
The preliminary facts are not disputed. Upon the marital breakdown in late 1974, custody of the three children was, under a separation agreement, given to the mother. That agreement survived a judgment of divorce entered in favor of the father in January, 1975. It was not until April, 1976, when the father, who had since remarried, learned that his former wife was contemplating leaving the jurisdiction, that this proceeding for change of custody based on the mother’s alleged unfitness was begun. Pending a hearing at Special Term, the sons were temporarily placed with their father.
The picture that developed is a mass of hopelessly conflicting unpleasant cross-accusations. Petitioner views himself as a devoted and responsible father. In the former wife’s eyes, however, he is a gambler, an unethical person, and an inatten *588 tive and physically abusive father. The mother, who remarried shortly after this proceeding was brought, describes herself as a homebody. In contrast, the father, buttressed by witnesses, characterizes her as a promiscuous barfly who, while entertaining a series of paramours in the children’s home, neglected the children.
An extensive investigation by the County Department of Probation was inconclusive. Noting the number of vital contradictions, the probation officer made no recommendation for custody of the sons. She concluded only that both parents seemed to love and be genuinely concerned with the children, and that, due to the mother’s contemplated relocation, the father would probably supply a more stable environment.
The eight-day hearing before Special Term, which included testimony of physicians, psychiatrists, teachers, and neighbors, was similarly fraught with contradictions. The testimony of the medical experts provides but one example among many. The father’s experts testified that in April, 1976, when change of custody was first sought, the then four year old was badly bruised and the then five year old was suffering from a nervous skin disorder. One physician even filed a report of child abuse. The boys’ pediatrician, on the other hand, stated that he had never seen signs of child abuse and that the five year old’s rash could not have been caused by anxiety. The authorities, moreover, ultimately determined that the child abuse report was unfounded.
There is more. The father’s alleged physical abuse of the children, his asserted delinquency in support payments, the mother’s purported neglect of the home, and her alleged promiscuous consorting with intermittent paramours are but four of numerous areas in which the testimony is flatly contradicted.
Concluding that the sons fared poorly with their mother, Special Term, in an elaborated opinion, awarded their custody to the father. The Appellate Division, in an even more elaborate writing, reversed, expressly crediting the testimony in favor of the mother and citing the rule that modification of a custody agreement reached by the parties requires a change in circumstances, especially with respect to fitness (see Matter of Ebert v Ebert, 38 NY2d 700, 703). Custody was awarded to the parents jointly, the sons to spend weekdays with the mother and weekends with the father.
To date, the order of the Appellate Division having been *589 stayed, the sons remain with the father. Despite court order to the contrary, he has not permitted the mother visitation. For reasons unrevealed by the record, the whereabouts of the mother are now undisclosed.
Under section 240 of the Domestic Relations Law, neither parent has a "prima facie right” to custody. Instead, the court is to "give such direction * * * as, in the court’s discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child”. It is from this language that the authority to entrust custody of a child to both parents "jointly” has been inferred (see, e.g., Dodd v Dodd, 93 Misc 2d 641, 644-645; Perotti v Perotti, 78 Misc 2d 131, 132).
"Joint”, or, as it is sometimes called "divided”, custody reposes in both parents a shared responsibility for and control of a child’s upbringing (see Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal L Rev 978,. 1009-1010; compare 1 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], pp 14-60 to 14-61; see, generally, "Split”, "Divided”, or "Alternate” Custody of Children, Ann., 92 ALR2d 695). It may or may not include an arrangement for alternating physical custody (compare Schack v Schack, NYLJ, Aug 21, 1974, p 15, col 8, p 17, col 1, with Perotti v Perotti, 78 Misc 2d 131, 134, supra).
On the wisdom of joint custody the authorities are divided (see Dodd v Dodd, 93 Misc 2d 641, 645-647, supra, for a collection of authorities and an analysis of competing concerns; Bodenheimer, pp 1009-1010). Of course, other considerations notwithstanding, children are entitled to the love, companionship, and concern of both parents. So, too, a joint award affords the otherwise noncustodial parent psychological support which can be translated into a healthy environment for the child.
But, that there is no perfect solution to the divided family does not mean that the court should not recognize the division in fact of the family. Children need a home base. Particularly where alternating physical custody is directed, such custody could, and would generally, further the insecurity and resultant pain frequently experienced by the young victims of shattered families (see Foster & Freed, Law and the Family— New York, § 29:6A [1978 Supp]).
It is understandable, therefore, that joint custody is encouraged primarily as a voluntary alternative for relatively stable, *590 amicable parents behaving in mature civilized fashion (see, e.g., Dodd v Dodd, 93 Misc 2d 641, 646-647, supra; Bodenheimer, pp 1010-1011). As a court-ordered arrangement imposed upon already embattled and embittered parents, accusing one another of serious vices and wrongs, it can only enhance familial chaos.
More than four years since their separation, the parents are evidently still unable to manage their common problems with their children, let alone trust each other. Instead, they continue to find fault and accuse. They have failed to work out between themselves even a limited visitation with the children. To expect them to exercise the responsibility entailed in sharing their children’s physical custody at this time seems beyond rational hope. It would, moreover, take more than reasonable self-restraint to shield the children, as they go from house to house, from the ill feelings, hatred, and disrespect each parent harbors towards the other.
That the mother’s whereabouts are undisclosed, and that she is admittedly desirous of moving out of the jurisdiction, suggests still further complications. The physical custody arrangement ordered by the Appellate Division contemplates reasonable geographical proximity. Under the instant .circumstances, alternating physical custody is, even as a matter of logistics alone, unrealistic.
That the joint custody may not stand, however, does not resolve the issue. This court, even if it were possible on the hopelessly conflicted record, does not make new findings of fact. Instead, the court reviews the record and chooses only between the findings of the courts below. (See CPLR 5501, subd [b]; 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.16.) The conflicts and contradictions in this record, however, are so severe and so go to the heart of the matter that it is impossible to resolve them without assessments of credibility. Either or both of the parents with their retinues of contradictory lay and expert witnesses have presented such extremes of proof that further inquiry in depth is required to resolve the issues. While litigation rarely provides issues of fact free from serious contradiction, the state of this particular record makes resolution, at this stage, hopeless.
An added difficulty is that two years have elapsed since the hearing at Special Term. During that period, the boys have lived with their father; they have been prevented from seeing *591 their mother; and the mother has evidently found it necessary to conceal her whereabouts.
However imperative it otherwise would be for this court to end the proceeding, in light of all that has occurred and the critical inconsistencies in the record, a new but expedited hearing is required. Both Special Term and the Appellate Division in deciding and writing upon this case detailed their reasons. Read together the opinions dramatically reflect the sharp contradictions between the proof presented by the parties. Read separately, each supports the conclusion reached because each emphasizes the testimony of the separate retinues of witnesses. On appellate review, the present record is incapable of sustaining a plausible resolution.
Of course, whatever the ultimate disposition, it must be, as it has always been, in the best interest of the children (see, e.g., Domestic Relations Law, § 240; Finlay v Finlay, 240 NY 429, 433-434 [Cardozo, J.]). Yet, at this point on this record, it is impossible to discern where those interests lie. Even the undoubtedly objective probation officer could make no recommendation for the sons. The trial court, therefore, may wish to consider appointing a qualified guardian ad litem for the children, who would be charged with the responsibility of close investigation and exploration of the truth on the issues and perhaps even of recommending by way of report alternative resolutions for the court to consider (see CPLR 1202; cf. Barry E. v Ingraham, 43 NY2d 87, 95).
There are no painless solutions. In the rare case, joint custody may approximate the former family relationships more closely than other custodial arrangements. It may not, however, be indiscriminately substituted for an award of sole custody to one parent. Divorce dissolves the family as well as the marriage, a reality that may not be ignored. In this case the gross conflict between the parents is so embittered and so involved with emotion and litigation that between them joint custody is perhaps a Solomonic approach, that is, one to be threatened but never carried out. At least, that is what the present record shows. A new record may offer a better, if still imperfect, solution.
Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, without costs, and a new hearing ordered. Pending such hearing the custody of the children should remain as provided by Special Term of Supreme Court in its order of July 6, 1976.
*592 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order, insofar as appealed from, reversed, etc.