RUTH STANAT, Respondent, v JON E. R. STANAT, Appellant.

First Department, April 19, 1983

APPEARANCES OF COUNSEL

*Paul M. Weltz* for appellant.

*Abraham J. Heller* of counsel (*Irving Shafran,* attorney), for respondent.

OPINION OF THE COURT

ASCH, J.

The parties to this action were married on June 24, 1972, and their only child, a son, was born on November 26, 1977. Each is extremely well educated and each earns a substantial salary. Throughout the trial and on this appeal, both parties were engaged in a "tug of war" over the child with the infant being pulled in both directions. In their eagerness to obtain custody of the child, each of the litigants attempted to portray the other as being an unfit parent. They have only succeeded in convincing the court that the two are extremely hostile toward each other, incapable of living together, and incapable of working out mutual problems, especially that of the bringing up of the son they each profess to love.

The transcript, covering 1,535 pages, is replete with conflicting testimony, both lay and professional, as to the qualities of the parties for parenting. The Judge, both patiently and painstakingly, presided for 18 days. After

observing the personalities and demeanor of the parties and their respective witnesses, he stated "each of the parties has engaged in and continued a deliberately hostile and verbally rude course of conduct designed to demean the other, create unhappiness and cause both mental and physical grief."

The court went on to grant dual divorces on the grounds of cruel and inhuman treatment. As to the custody issue, the court noted that immediately after Scott's birth, the father established a very close relationship with his son. The court also recognized that both parties exhibited a different role of parenting from the other. As to the plaintiff wife, she had a reserved approach with emphasis placed on discipline. The husband's was freer, less disciplined. The court stated that each had "positive qualities" and "complements the other's shortcomings." The court concluded that: "[I]n [this] light, each parent's characterizations of the other's lack of fitness and parental ability are overstated. The court is convinced that each parent is concerned for the child's best interest and that each feels love and affection for the child * * * Upon balancing the parental approaches * * * it appears that plaintiff's relationship with the child is the more positive one. The child's overall growth and development will be more enhanced when exposed to the plaintiff and the environment created by her."

Defendant maintains that the court abused its discretion in awarding sole custody to the plaintiff wife albeit with liberal visitation privileges to the husband. Defendant is incorrect and the judgment should be affirmed.

In reviewing the award of custody to one parent, each case must be determined on its own merits, the circumstances of the parties must be weighed and the best interests of the child is paramount. (*Friederwitzer v Friederwitzer*, 55 NY2d 89.) Here the court applied the appropriate criteria in arriving at its decision. It was faced with conflicting claims that the other was unfit. The court rejected these contentions and concluded that, although the parties utilized different approaches in child rearing, the setting, as established by the wife, would be of more benefit to the child.

The husband attempted to show that his wife was distant and as a result unfit during their son's first 2½ years. The wife in her proof really does not dispute all of these accusations but explains that she could not be a mother 100% of the time because of medical problems. And there is support in the record to this effect. The husband's claim of unfitness only refers to the period before divorce discussions were seriously entered into, i.e., March, 1980. After that, there is considerable testimony that the plaintiff is indeed a loving and caring mother. Also, there is the testimony of plaintiff's expert that she would be a fit custodial parent. The only unfavorable testimony concerns a period some two years ago. As to the present, there is no claim of unfitness.

The Court of Appeals in reviewing a neglect proceeding stated that: "[T]he question of custody of children, this court has said, is ordinarily a matter of discretion for the trial court (*Bunim* v. *Bunim,* 298 N.Y. 391, 393) and only rarely can be upset by this court on review. That discretion, however, is not absolute and may be set aside where it lacks 'sound and substantial basis in the testimony' or is 'opposed to everything presented to the court' (*Bunim* v. *Bunim,* 298 N.Y. 391, 393, *supra*)." (*Matter of Darlene T.,* 28 NY2d 391, 395.) Here the court's decision is based on sound reasoning and has a substantial basis in the testimony of the plaintiff and her witnesses and in the very assertions of the defendant. It cannot, therefore, be said that the court abused its discretion in awarding custody to the plaintiff.

It has been urged that the judgment of Special Term be modified to require joint custody herein. "Joint custody" seems to be one of those ideas which are often quite attractive at a distance, but not quite so, when viewed close up.

The legislation which would encourage the use of joint custody by the courts as the norm in all or most cases has been universally disapproved by the New York County Lawyers' Association, the Association of the Bar, the New York State Bar Association and the Women's Bar Association of the State of New York. The bill was not approved by then Governor Carey and the prevailing sentiment can be

summed up in a statement of the New York County Lawyers' Association: The bill "would permit, even encourage, the courts to award joint custody with shared responsibility for bringing up a child to separated or divorced parents who cannot agree on anything else in their lives." This certainly applies to the parents in this case.

"Clearly, there are varying degrees of animosity. There is likely a point where the communications between ex-spouses are so destructive that joint custody subjects the child to more harm than good. This was the crux of an important opinion by Chief Judge Breitel of the New York Court of Appeals where, in the case of *Braiman v. Braiman*, he reversed a joint custody order. 'Entrusting the custody of young children to their parents jointly, especially where the shared responsibility and control includes alternating physical custody, is insupportable when parents are severely antagonistic and embattled * * * [I]t can only enhance familial chaos.' (*Braiman v. Braiman* [44 NY2d 584, 587, 590], 378 N.E.2d 1019, 1020 (1978))." (New York State Council on Children and Families, The Effects of Joint Custody on Children: A Review of the Literature, Feb. 2, 1981, p 5, n 3.)

Accordingly, judgment of the Supreme Court, New York County (BOWMAN, J.), entered on June 3, 1982, which after a nonjury trial, *inter alia,* awarded the plaintiff wife permanent custody of the infant child with liberal visitation rights to defendant father, awarded child support in the amount of $125 per week, awarded the wife sole possession and title to the co-operative apartment and equally distributed the remaining marital assets, should be affirmed without costs.

MURPHY, P. J. (concurring). A very close evidentiary question is presented upon the issue of custody. Both parents are clearly fit; either could be awarded custody. Upon reading the record, I was impressed by the fact that the defendant alone had showed an unmistakable interest in the child both before and after the marital difficulties arose. Thus, it was my initial evaluation that custody of the child should be awarded to the defendant. Notwithstanding my original inclination in this matter, it was necessary, in the end, to give due deference to the factual

findings of the Trial Judge because he had the opportunity to observe the demeanor of the witnesses at this extended trial. Had the parties been on more cordial terms, I would have voted for joint custody in this proceeding.

CARRO, J. (*dubitante*). The most difficult decision a Judge must make, save perhaps that of sentencing a criminal defendant, is determining child custody in the wake of a shattered marriage. The court below, after reading the numerous psychiatric reports and hearing lengthy testimony, found each spouse to have significant strengths as well as weaknesses in parenting ability. Justice BOWMAN wrote:

"The court is cognizant of each parent's characterizations as to the other's lack of parental ability and fitness. Although each parental approach differs, each approach has positive qualities. Each approach also complements the other's shortcomings and when properly balanced they will enhance the child's growth and development. In that light, each parent's characterizations of the other's lack of fitness and parental ability are overstated.

"The court is convinced that each parent is concerned for the child's best interest and that each feels love and affection for the child. Thus the scope of the court's inquiry is directed at applying the use of an affirmative standard, which parent is better fit to guide the development of the child and his future. Salk v Salk, 89 M. 2d 883."

The court then went on to find a preference for the mother, awarding her custody but providing liberal "visitation" time for defendant father.

While I in no way seek to criticize the lower court's obvious sensitivity and care in weighing the child's needs and the resources each parent offers, I am perplexed that no mention was made of the third alternative available — "joint custody." Of the five psychologists who submitted reports, one urged that custody be awarded the father, and two — the court-appointed psychiatrist and the director of the Family Counseling Unit — posited joint custody as "the preferred arrangement." In *Braiman v Braiman* (44 NY2d 584) Chief Judge BREITEL succinctly stated the pros and cons of this alternative:

"[2] Under section 240 of the Domestic Relations Law, neither parent has a 'prima facie right' to custody. Instead, the court is to 'give such direction * * * as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child'. It is from this language that the authority to entrust custody of a child to both parents 'jointly' has been inferred (see, e.g., *Dodd v Dodd,* 93 Misc 2d 641, 644-645; *Perotti v Perotti,* 78 Misc 2d 131, 132).

" 'Joint', or, as it is sometimes called 'divided', custody reposes in both parents a shared responsibility for and control of a child's upbringing (see Bodenheimer, Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody, and Excessive Modifications, 65 Cal L Rev 978, 1009-1010; compare 1 Lindey, Separation Agreements and Ante-Nuptial Contracts [rev ed], pp 14-60 to 14-61; see, generally, 'Split', 'Divided', or 'Alternate' Custody of Children, Ann., 92 ALR2d 695). It may or may not include an arrangement for alternating physical custody (compare *Schack v Schack,* NYLJ, Aug 21, 1974, p 15, col 8, p 17, col 1, with *Perotti v Perotti,* 78 Misc 2d 131, 134, *supra*).

"On the wisdom of joint custody the authorities are divided (see *Dodd v Dodd,* 93 Misc 2d 641, 645-647, *supra,* for a collection of authorities and an analysis of competing concerns; Bodenheimer, pp 1009-1010). Of course, other considerations notwithstanding, children are entitled to the love, companionship, and concern of both parents. So, too, a joint award affords the otherwise noncustodial parent psychological support which can be translated into a healthy environment for the child.

"But, that there is no perfect solution to the divided family does not mean that the court should not recognize the division in fact of the family. Children need a home base. Particularly where alternating physical custody is directed, such custody could, and would generally, further the insecurity and resultant pain frequently experienced by the young victims of shattered families (see Foster & Freed, Law and the Family — New York, § 29:6A [1978 Supp]).

"It is understandable, therefore, that joint custody is encouraged primarily as a voluntary alternative for relatively stable, amicable parents behaving in mature civilized fashion (see, e.g., *Dodd v Dodd,* 93 Misc 2d 641, 646-647, *supra;* Bodenheimer, pp 1010-1011). As a court-ordered arrangement imposed upon already embattled and embittered parents, accusing one another of serious vices and wrongs, it can only enhance familial chaos * * *

"Of course, whatever the ultimate disposition, it must be, as it has always been, in the best interest of the children (see, e.g., Domestic Relations Law, § 240; *Finlay v Finlay,* 240 NY 429, 433-434 [CARDOZO, J.]) * * *

"There are no painless solutions. In the rare case, joint custody may approximate the former family relationships more closely than other custodial arrangements." (44 NY2d, at pp 589-591.)

It is apparently no longer the case, as Chief Judge BREITEL found it in 1978, that "[o]n the wisdom of joint custody the authorities are divided" (44 NY2d, at p 589). Legislation which would encourage the use of joint custody has been disapproved by the Association of the Bar, the New York State Bar Association, the New York County Lawyers' Association and the Women's Bar Association of the State of New York.

This general response, however, makes no less true the observations that "[i]n the rare case, joint custody may approximate the former family relationships more closely than other custodial arrangements", and "too, a joint award affords the otherwise noncustodial parent psychological support which can be translated into a healthy environment for the child." (*Braiman v Braiman,* 44 NY2d, at pp 589, 591 [per BREITEL, Ch. J.]; contra *Bliss v Ach,* 86 AD2d 575 ["Normally such a provision is cosmetic only and is employed to salve the feelings of the defeated parent * * * the requirements for constant consultation on matters necessarily entailed in the concept of joint custody will exacerbate the sharp differences evidenced between these unmarried parents"].)

The situation of the parties here suggests to me that this is that "rare case" where joint custody would benefit the child as well as "the defeated parent." Both parents yearn

to give their love and support to this child as he grows up. The boy obviously benefits from the attentions of both. Joint custody might well dispel the competition between the parties and, by declaring "no contest" at all, encourage each to love and nurture the one good thing remaining from their union.

The court today affirms the award of custody to the mother. I join the majority for the simple reason that I believe there should be an end to this litigation. While there is technically never an end to these matters — the parties may always come in at a future date and seek a modification of the award — I note that the liberal visitation rights accorded the father give the parties the freedom to effect informally just the sort of atmosphere I have described and the psychologists urged. I hope that in now being free to live their own lives they can put aside their acrimony and competitiveness, concentrating instead on the ultimate goal of everyone who has touched this case — the best interests of their child.

Ross and ALEXANDER, JJ., concur with ASCH, J.; MURPHY, P. J., concurs in an opinion; CARRO, J., *dubitante* in an opinion.

Judgment, Supreme Court, New York County, entered on June 3, 1982, affirmed, without costs and without disbursements.