**In re the MARRIAGE OF Margaret Jane E. LAMPTON, Appellant,**

**and**

**Kenneth R. Lampton, Jr., Appellee.**

**No. 82CA0615.**

Colorado Court of Appeals, Div. III.

July 7, 1983.

Rehearing Denied Aug. 4, 1983.

Certiorari Granted Jan. 16, 1984.

Elaine G. Edinburg, P.C., Elaine G. Edinburg, Denver, for appellant.

Malman & Malman, P.C., Jerome S. Malman, David P. Solomon, Denver, for appellee.

STERNBERG, Judge.

■ The dispositive issue in this appeal is whether, in a dissolution of marriage proceeding, joint custody of a child may be awarded where one parent opposes such award. We hold that an award of joint custody of a child in the absence of agreement of the parties, as was done here, is an abuse of discretion. Therefore, we reverse the custody order and remand the cause for further proceedings.

Margaret Jane E. Lampton, the mother, petitioned for dissolution of her marriage to Kenneth R. Lampton, Jr., the father. At that time, the mother, in her second trimester of pregnancy, requested that she be awarded sole custody of the yet to be born child with reasonable rights of visitation to be awarded the father.

By the time the case came on for a hearing on permanent orders, the parties had reached agreement on all issues except custody of their daughter, Megan, who was by then 13 months old and was residing with her mother. At the start of the hearing the father's attorney made it clear that he was "looking forward to a joint custody stipulation" and that "we're not talking about visitation." He reiterated his position several times, indicating the only remaining problem to be "with respect to that joint custody, that shared custody question." He objected to the form of decree presented by the mother's attorney because the father was "asking for shared custodial rights." The mother and her attorney knew the issue was the father's claim for joint custody, and they objected. Nevertheless, as is made abundantly clear by its comments at the hearing on the new trial motion, the court ordered joint custody.

Recently this court stated that joint custody "cannot be awarded absent agreement" of the parties. *In Re Marriage of Norton*, 640 P.2d 254 (Colo.App.1981). The father, correctly characterizing the quoted statement as dictum, urges that we not follow it. We conclude that the statement from *Norton* is a correct statement of the law. The language in question, dictum though it may be in *Norton*, finds support in well-reasoned decisions on the subject from other jurisdictions.

In *Dodd v. Dodd*, 93 Misc.2d 641, 403 N.Y.S.2d 401 (1978), the mother sought sole custody of the children while the father requested that custody be awarded jointly. The court recognized the benefits to the children from maintaining a relationship with both parents and that the conventional award of custody to one parent, "tends to make ex-parents of fathers, painfully deprived creatures of the children, and overburdened people out of the mothers." Nevertheless, the court denied the father's request for joint custody because of the

parent's history of disharmony, noting that:

"The most ardent professional proponents of joint custody assume cooperation between parents and agreement about child rearing practices as basic requirements of joint custody."

To like effect is *In Re Marriage of Burham*, 283 N.W.2d 269 (Iowa 1979) (a significant test of the feasibility of joint custody is whether the parents agree), and *Braiman v. Braiman*, 44 N.Y.2d 584, 407 N.Y. S.2d 449, 378 N.E.2d 1019 (1978) (joint custody is encouraged primarily as a voluntary alternative, not to be indiscriminately substituted for an award of sole custody to one parent; joint custody award set aside and sole custody awarded to the father).

Similarly, *In re Marriage of Neal*, 92 Cal.App.3d 834, 155 Cal.Rptr. 157 (1979), the trial court was held to have abused its discretion in awarding joint custody over the mother's objections. The *Neal* court observed that, in the absence of cooperation between the parties, joint custody awards would tend to foster parental disagreements as children grow older, requiring frequent resort to the courts for settlement. It also stated:

"In all events, there is prevailing opinion among the legal writers to the effect that an award of 'joint custody' is unworkable unless the parents agree to it."

Indeed, this principle has been recognized by our General Assembly. In S.B. 286, establishing procedures for the award of joint custody in cases after July 1, 1983, there is included the requirement that any motion for joint custody be filed by both parties, § 14–10–124(5), C.R.S.1973 (Cum. Supp.), and that any plan for joint custody must be jointly agreed to by the parties. Section 14–10–123.5(5), C.R.S.1973 (Cum. Supp.).

■ It is axiomatic that the focal point in any award of custody is the best interests of the child. The statute, § 14–10–124, C.R.S.1973, so mandates; case law has reiterated this principle for many years in a variety of circumstances. *See, e.g., Songster v. Songster*, 150 Colo. 466, 374 P.2d

197 (1962); *In Re Marriage of Lawson*, 44 Colo.App. 105, 608 P.2d 378 (1980); *In Re Marriage of McGee*, 44 Colo.App. 330, 613 P.2d 348 (1980). An award of joint custody, absent agreement of the parties, is *a fortiori* contrary to the best interests of the child.

Imposing a legal right to an equal voice in all decisions, in the face of the opposition of one parent, can only lead to continued disputes and bickering between the parents regarding details of the upbringing of the child. If the parents cannot agree even to the initial award of joint custody, it is unrealistic to assume that the parents will be able to agree on the myriad of questions that arise during the growth of a child from cradle to emancipation. Whether such disputes are resolved by resort to the courts, or by which parent can shout the louder, is immaterial. Subjecting the child to such a tug-of-war could not possibly serve the child's best interests. *See Rhoades v. Rhoades*, 188 Colo. 423, 535 P.2d 1122 (1975).

■ Contrary to the father's contention, the fact that here the parties had agreed to consult regarding major decisions in the child's life such as religion and education does not render the wife's objection to a joint custody award to be an unimportant question of semantics. In the first place, the agreement of the mother to consult with the father over certain decisions in the upbringing of the child, especially in the face of her specific objections to joint custody cannot be taken as a consent to an award of joint custody. Secondly, there is a significant difference, both from a practical standpoint of raising children, and in legal effect, between agreeing to consult with the non-custodial parent, and agreement to joint custody.

■ The importance of this distinction is made clear by use of a hypothetical example. In a situation in which the parents have consulted about a question concerning the child's upbringing, but do not agree, the question arises as to how the impasse is to be broken. If custody is

joint, each parent has a legal right to contribute to the decision, and such disagreement would have to be resolved by the court. *See In Re Marriage of Griffin,* 666 P.2d 1105 (Colo.App.1982) (cert. granted June 13, 1983). If, on the other hand, one parent receives sole custody and agrees merely to consult with the other parent concerning questions arising in the child's upbringing, the custodial parent is, in general, entitled to resolve the dispute as he or she sees fit. Section 14–10–130(1), C.R.S. 1973.

Accordingly, the custody order is reversed and the cause is remanded to the trial court with directions to amend the decree insofar as pertains to custody to provide that the mother shall have the sole custody of the child and the father's rights shall be denominated "visitation."

KELLY, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent.

The parties here stipulated to matters pertaining to property and debts, maintenance, attorney's fees and costs, and the amount of child support to be paid by the father. The court properly found from the evidence that both parents were "fit and proper persons for custodial rights to the child, and that both will act with love and affection toward the child, and will act for the best interest of the child." There was no dispute that the primary residence of the child should be with the mother, and that the father should have a considerable amount of time with the child. They were in agreement that both should participate in any major decisions concerning the child's welfare, including her education, health care, and religious training. *See* § 14–10–130(1), C.R.S.1973.

The only matter on which they disagree is what to call the arrangement. The court used the words "custody with both parties," and referred to the father's time with the child as his "custodial right with the child." The mother does not ask for a change in the basic provisions of the order; all she wants is to have herself declared as the only "custodian" and to have the father's time with the child be called "visitation."

Inasmuch as the mother does not ask for other changes in the order, continuing the arrangement under the terminology used by the trial court cannot possibly prejudice her. "In reviewing an order affecting the custody of a child, an appellate court will make every reasonable presumption in favor of the acts of the trial court." *Searle v. Searle,* 115 Colo. 266, 172 P.2d 837 (1946). We should not reverse on a matter of semantics.