In re the MARRIAGE OF Kenneth R. LAMPTON, Jr., Petitioner,

and

Margaret Jane E. Lampton, Respondent.

No. 83SC344.

Supreme Court of Colorado, En Banc.

Aug. 19, 1985.

Malman & Malman, P.C., Jerome S. Malman, Denver, for petitioner.

Elaine G. Edinburg, P.C., Elaine G. Edinburg, Denver, for respondent.

ERICKSON, Justice.

We granted certiorari to review *In re Marriage of Lampton,* 677 P.2d 352 (Colo. App.1983), in which the court of appeals reversed the district court's award of joint custody of the parties' minor child in a marriage dissolution proceeding. The court of appeals held that joint custody cannot be awarded in the absence of an agreement between the parties. We conclude that the district court abused its discretion in awarding joint custody and joint control under the facts in this case, and return the case to the court of appeals for remand to the district court for a new hearing.

### I.

Petitioner, Kenneth Lampton (father) and respondent, Margaret Lampton (mother) separated in May 1980. Their only child, Megan, was born August 8, 1980, while the parties were living apart. On August 27, 1980, the mother filed a petition for dissolution of marriage, sought sole custody of Megan, and agreed to reasonable rights of visitation for the father. At that time, the father agreed to sole custody by the mother. The father first raised the issue of joint custody at a pre-trial conference on June 8, 1981. The Arapahoe County District Court ordered the parties to discuss the matter and noted that "failing agreement [by the parties], this court is disinclined to award joint custody."

At the permanent orders hearing on September 25, 1981, the mother testified that she was opposed to joint custody and said that she did not believe that the father was a "fit and proper" person to have custody of Megan because he had a "drinking problem." She also testified that the father was a "violent man" who "physically abused" her while she was pregnant with Megan. The mother stated that although she did not approve of the father's life style, she was not adverse to consulting with him on matters regarding the child's education, religious upbringing, and other major decisions involving the child's welfare. The only issues on which the parties were not in agreement related to the time the father would spend with Megan and whether the father's rights would be called "custodial" or "visitation" rights.

On November 11, 1981, the district court entered an order dissolving the marriage between the parties. After finding that both parents were "fit and proper persons for custodial rights," the court awarded custody of Megan to both parties, with the child's primary residence to be with the mother. In addition to awarding both parents custody, the district court included a provision in its order giving both parents

joint control over "the major decisions concerning the minor child's education, religious upbringing and major medical decisions."

The mother appealed the trial court's award, alleging that joint custody cannot be awarded in the absence of an agreement by the parties. The court of appeals reversed and remanded the case to the district court with directions that the decree be amended to award custody to the mother and visitation to the father.

The father asserts three grounds for reversal. He first argues that the decision of the trial court is substantiated by the record and that the court of appeals cannot substitute its judgment for that of the district court. Second, he claims that the court of appeals' decision was based on a statute not in effect at the time of the custody award. Finally, the father asserts that the court of appeals erred by directing the award of custody to the mother without a sound legal basis.

## II.

■ The court of appeals held that the district court abused its discretion in awarding joint custody of Megan in the absence of an agreement by the parties. *Lampton,* 677 P.2d at 353. A custody determination lies within the trial court's sound discretion and is predicated on the factors enumerated in the Uniform Dissolution of Marriage Act (UDMA). §§ 14–10–101—133, 6 C.R.S. (1973 & 1984 Supp.). *See Rhoades v. Rhoades,* 188 Colo. 423, 535 P.2d 1122 (1975). The trial court's determination of custody will not be disturbed on appeal unless it constitutes a clear abuse of discretion. *Root v. Allen,* 151 Colo. 311, 377 P.2d 117 (1962); *Wiederspahn v. Wiederspahn,* 146 Colo. 214, 361 P.2d 125 (1961).

■ Joint custody is defined as "a sharing of legal or physical custody by both parents so as to insure the access of the child to both ... divorced parents in a frequent and continuing manner."[1] An agreement between the parties is generally the foundation for an award of joint custody, because the absence of an agreement would make it difficult for the parties to reach a joint decision on important issues affecting the child and would often require the intervention of the court. *See In re Marriage of Burham,* 283 N.W.2d 269 (Iowa 1979); *In re Marriage of Neal,* 92 Cal.App.3d 834, 155 Cal.Rptr. 157 (1979); *Dodd v. Dodd,* 93 Misc.2d 641, 403 N.Y. S.2d 401 (1978). Child custody arrangements that promote discord between parents are not in the best interests of the child. *Griffin v. Griffin,* 699 P.2d 407 (Colo.1985). A court ordered arrangement imposed on "embittered and emotional parents ... can only enhance familial chaos." *Braiman v. Braiman,* 44 N.Y.2d 584, 407 N.Y.S.2d 449, 378 N.E.2d 1019, 1021 (1978).

■ In Colorado, the best interests of the child must govern all custody awards. *Griffin v. Griffin,* 699 P.2d 407 (Colo. 1985); *In re Marriage of Short,* 698 P.2d 1310 (Colo.1985). Section 14–10–124(1), which was the statute in effect at the time of the custody award in this case, sets forth the statutory criteria for an award of custody:

The court shall determine custody in accordance with the best interests of the child. In determining the best interests of the child, the court shall consider all relevant factors, including:

(a) The wishes of the child's parents as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school and community; and

---

1. *See* Freed & Foster, *Family Law in the Fifty States: An Overview,* 16 Fam.L.Q. 289, 292 (1982–1983). Section 14–10–123.5, 6 C.R.S. (1984 Supp.), now defines joint custody as "an order awarding legal custody of the minor child to both parties and which provides that all decisions regarding the health, education, and general welfare of the child shall be made jointly."

(e) The mental and physical health of all individuals involved.

■ Applying these criteria to the facts in this case, we conclude that the district court abused its discretion by entering an award of joint custody. At the hearing, the mother testified that she did not favor joint custody because of the father's life style, drinking habits, and history of physical abuse. She also expressed concern over Megan's emotional state upon her return from visits with the father. The father denied the allegations. Regardless of the truth of these allegations, the testimony demonstrates hostility between the parents and indicates that an award of joint custody would be contrary to the child's best interests.

■ We also hold that the district court erred by including within its order an additional provision giving both parents "joint control" over major child-rearing decisions. At the hearing, the mother agreed that the father "should have some input" into the child's education, religious training, and other major areas of upbringing. The mother's testimony cannot be interpreted as consent to actual joint control over such decisions. In the absence of consent, it is unlikely that an award giving both parents joint control over decision-making would serve the child's best interests. In *Griffin,* we held that a separation agreement, incorporated into a dissolution decree, requiring the parents to jointly control their child's education, was contrary to the child's best interests and unenforceable because requiring the parents "to meet and agree after they have already demonstrated their inability to agree exposes the child to further discord and surrounds the child with an atmosphere of hostility and insecurity." 699 P.2d at 410. If this is true where the parents had once unequivocally agreed to joint control, then a similar conclusion follows where, as here, there never existed an agreement to joint control, and it is clear that parental conflict is inevitable.

■ We recognize that the absence of an agreement did not foreclose joint custody under all circumstances where custody has been awarded pursuant to the provisions of section 14–10–124(1), 6 C.R.S. (1973).[2] However, in view of the statutory criteria, it is difficult to conceive of the circumstances in which joint custody would best serve the interests of the child in the absence of an agreement between the parties. Only in the most exceptional cases could an award of joint custody be warranted under section 14–10–124(1) in the absence of mutual consent and agreement by the parties.

### III.

The district court in this case awarded joint custody and joint control over upbringing to both parents, physical custody to the mother, and liberal visitation rights to the father. We hold that the awards of joint custody and joint decision-making were an abuse of discretion under section 14–10–124(1). Given the passage of time since the evidentiary hearing was held, a new hearing should be held on the issues of custody and visitation based upon the current status of the parties and in light of the standards set forth in this opinion.

Accordingly, we return this case to the court of appeals with directions that it be remanded to the district court for a new hearing.

---

2. After the hearing in this case, the General Assembly amended the child custody statutes to specifically set forth the criteria governing awards of joint custody. Ch. 178, secs. 2–4, §§ 14–10–123.5 and 14–10–124, 1983 Colo.Sess. Laws 645, 645–47. The new statutes now specifically require that the parties agree to the plan of joint custody, § 14–10–123.5(5), 6 C.R.S. (1984 Supp.), and that the court consider the ability of the parents to cooperate and make joint decisions. § 14–10–124(5)(a). 6 C.R.S. (1984 Supp.). The new statutory scheme does not govern the disposition of this case.